IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ELIZABETH ELSTON, individually and<br>on behalf of others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-2070-KHV |
| | ) | |
| HORIZON GLOBAL AMERICAS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On March 28, 2019, Elizabeth Elston, individually and on behalf of others similarly situated, filed an amended complaint against Horizon Global Americas, Inc., alleging that defendant failed to pay her for work hours and overtime. First Amended Complaint (Doc. #8). Plaintiff sues under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 et seq. This matter is before the Court on Plaintiff's Unopposed Motion For Preliminary Settlement Approval (Doc. #32) filed March 20, 2020. For reasons stated below, the Court overrules plaintiff's motion.

## Factual And Procedural Background

Highly summarized, plaintiff's amended complaint alleges the following:

Defendant is a designer, manufacturer and distributor of custom-engineered towing, trailering, cargo management and related accessory products. It employed plaintiff as a Warehouse Associate from January 2 until April 4, 2018. During this period, if an employee clocked in ten minutes or less before the start of his or her shift, defendant's computerized system rounded the clock-in time to the scheduled start time. Additionally, when an employee clocked out at the end of his or her shift, the system rounded the clock-out time back to the nearest tenth of an hour. As

a result of these rounding policies, defendant did not pay plaintiff for all of the time that she actually worked.

Although preparation of equipment was an integral and indispensable part of their principal job duties, defendant encouraged employees to prepare all equipment before they clocked in. Accordingly, employees regularly performed compensable work 15 minutes before starting their scheduled shifts, but defendant did not pay them for it.

On March 28, 2019, plaintiff individually and on behalf of others filed an amended complaint alleging that defendant violated her rights under the FLSA and KWPA. First Amended Complaint (Doc. #8). Specifically, plaintiff asserted the following claims:

- Count 1: FLSA collective action claim on behalf of plaintiff and current and former employees of defendant who were in hourly positions and worked in the United States at any time during the last three years.

- Count 2: KWPA class action claim on behalf of plaintiff and current and former employees of defendant who were in hourly positions and worked in Kansas at any time during the last three years.

Id. at 8.

On April 11, 2019, defendant answered the amended complaint, denying all liability and asserting 12 affirmative defenses. See Answer To First Amended Complaint (Doc. #9). Among other defenses, defendant asserts that it paid employees for all compensable work, which did not include activity during the rounding periods. Defendant alleges that it actually paid plaintiff and putative class members more time than they worked. Id. at ¶ 34.

On December 3, 2019, the parties attended mediation. Within a few days, they reached a settlement agreement on all claims, including those for both putative classes. Specifically, the agreement establishes two settlement classes. As to the FLSA collective action, the putative settlement class includes "[a]ll persons currently and formerly employed by Defendant Horizon in

hourly positions who worked at any time during the last three (3) years within the United States, limited to those current and former hourly employees who used a time clock." <u>Confidential Settlement And Release Agreement</u> (Doc. #33-1) at § 2(d) (quotations omitted).  As to the KWPA class action, the putative settlement class includes "[a]ll persons currently and formerly employed by Defendant in hourly positions who worked at any time during the last three (3) years within the State of Kansas, limited to those current and former hourly employees who used a time clock." <u>Id.</u> at § 2(e) (quotations omitted).

Under the proposed agreement, defendant agrees to pay a maximum gross settlement of $220,000, which includes attorneys' fees ($85,000), costs up to $20,000, plaintiff's service award ($2,500), interest, liquidated damages or "payments of any kind," except those that defendant incurred.  <u>Id.</u> at § 3(d).  Pursuant to a designated schedule, the parties will use a third-party administrator to send notices to putative class members.  During the consent period, members of the putative KWPA class action can (1) "opt-out of the Kansas Class and/or (2) "object to the portion of this Settlement Agreement pertaining to the Kansas Class Settlement Plaintiffs." <u>Id.</u> at § 6(f).  Members of the putative FLSA collective action can "file an opt-in consent to join the FLSA Litigation, for purposes of participating in the FLSA Litigation and this Settlement Agreement." <u>Id.</u>  According to a specific allocation formula, the final members of each class will receive various payment amounts.

In exchange for these payments, plaintiff and the putative class members agree to release certain claims.  Plaintiff agrees to release all claims in the amended complaint against defendant and related companies, in addition to any claims that "reasonably could have arisen out of the same facts alleged, whether known or unknown, accrued through the Settlement Release Date, including but not limited to any and all claims under the FLSA." <u>Id.</u> at § 7(a).  Although this release does

not cover claims that plaintiff did not bring or could not have brought in this litigation, plaintiff and defendant will separately execute "a mutually agreeable general release of all claims, known or unknown." Id.  This general release will exempt "those claims that have been or could have been asserted by [plaintiff] in the Individual Litigation, in favor of the Released Entities."[1]  Id. The parties agree that the general release "will not apply to any rights or claims that, by law, cannot be waived." Id.

The putative class members will release all claims in the amended complaint against defendant and related companies, "or claims that reasonably could have arisen out of the same facts alleged, whether known or unknown, accrued through the Settlement Release Date, including but not limited to any and all claims under the FLSA." Id. at § 7(b).  This release does not cover "claims that were not brought or could not have been asserted in the FLSA Litigation," and the putative class members "who do not sign and return their Consent, Claim Form and Release do not release any claims." Id.

The proposed settlement agreement also contains a confidentiality provision which provides that "until the filing of the papers in Court for approval" of the agreement, the parties and counsel agree to maintain confidentiality except as to spouses, tax or financial advisors, attorneys, taxing agencies, or as otherwise required by law, and except as necessary to obtain court approval of this settlement. Id. at § 8(e).  At no time can plaintiff, class members or counsel "contact the

---

[1]      Under the proposed settlement, "Individual Litigation" means claims that "have been or could have been asserted by [plaintiff] in her individual capacity in" Elston v. Horizon Global Americas, Inc., 19-cv-02347-DDC-ADM, a separate case in which plaintiff claims that defendant discriminated against her based on disability and sex, created a hostile work environment and retaliated against her.  Confidential Settlement And Release Agreement (Doc. #33-1) at 1.  Accordingly, beyond these claims and those in the present FLSA/KWPA litigation, the parties' purported general release would immunize defendant from all claims.

media about the settlement or respond to any inquiries by the media regarding the settlement, other

than to state that the matter was amicably settled and that no Court found [defendant] liable."  Id.

**Analysis**

Plaintiff asserts that the Court should approve the proposed settlement agreement because

it is fair, reasonable and beneficial to her, putative members of the FLSA collective action and

putative members of the KWPA class action.  The Court separately addresses the proposed

agreement as to each putative class.

**I.      Collective Action – FLSA Claims**

Plaintiff asserts that the Court should approve the proposed settlement of the FLSA

collective action claims.

Under the FLSA, on behalf herself and other "similarly situated" employees, plaintiff can

bring a collective action against her employer for unpaid wages or unpaid overtime.  Genesis

Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013) (quoting 29 U.S.C. § 216(b)).  A FLSA

lawsuit does not become a collective action unless other plaintiffs opt in by giving written consent.

Christeson v. Amazon.com.ksdc, LLC, No. 18-2043-KHV, 2019 WL 354956, at *3 (D. Kan.

Jan. 29, 2019).  Accordingly, a named plaintiff cannot settle claims on behalf of putative class

members who have not yet opted in.  Id. at 4.  Therefore, when putative class members have not

received notice of the lawsuit and an opportunity to opt in, the named plaintiff cannot seek final

settlement approval.  Id.  Instead, she may ask the Court to (1) conditionally certify the proposed

settlement class, (2) preliminarily approve the proposed settlement and (3) approve the proposed

notice to putative class members.  Id. at 5.  If the Court does so, it will order the parties to send the

approved notice to the putative class members and it will establish a period during which putative

class members may opt in.  Id.  When the opt-in period expires, the named plaintiff may file a motion for final collective action certification and final settlement approval.  Id.

Here, members of the putative collective action class have not received notice of the lawsuit and an opportunity to opt in.  Accordingly, plaintiff asks the Court to (1) certify the putative collective action class for settlement purposes only, (2) grant preliminary approval of the proposed settlement, (3) direct notice to the putative class members and (4) set a schedule and a hearing for final approval of the settlement and related deadlines.  Because the Court does not approve the proposed settlement, it does not address plaintiff's other requests.

Under the FLSA, parties must present a proposed settlement to the Court, which determines whether the settlement is fair and reasonable.  Id. at 5.  To approve the settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties and (3) the proposed settlement contains an award of reasonable attorney's fees.  Id.  Moreover, the Court must determine whether plaintiff's service award is fair and reasonable.[2]  Enegren v. KC Lodge Ventures LLC, No. 17-2285-DDC, 2019 WL 5102177, at *7

---

[2]      Because plaintiff has not shown that the proposed settlement agreement is fair and equitable, the Court does not address the reasonableness of the proposed attorney's fees or plaintiff's service award.  See Hoffman v. Poulsen Pizza LLC, No. 15-2640-DDC, 2016 WL 2848919, at *4 (D. Kan. May 16, 2016) (because proposed settlement award not fair and equitable, request for attorney's fees and costs premature).

The Court notes, however, that when parties reach a settlement under which defendant agrees to not oppose attorney's fees that come from a common fund—which is the case here—the Court "skeptically examine[s] and analyze[s] the fee and cost proposal" because "defendant has no incentive to bargain for lower fees."  Id.; see Confidential Settlement And Release Agreement (Doc. #33-1) at § 4(b) ("Consistent with applicable law, [defendant] shall not object to any application for attorneys' fees or costs made in accordance with this provision, provided, however, that if the Court questions the amount or allocation of costs (or any other issue related to costs), it shall be the sole responsibility of Class and Collective Action Counsel to argue in favor of said costs").

(D. Kan. Oct. 11, 2019).  If the settlement agreement satisfies these requirements, the Court may approve it to promote the policy of encouraging settlement.  <u>Christeson</u>, 2019 WL 354956, at *5.

### A.      Bona Fide Dispute

Plaintiff asserts that the parties have a bona fide dispute about whether defendant owes her and the putative class members wages and overtime for work which they performed before their start times and during the rounding periods.

When parties request approval of an FLSA settlement, they must provide sufficient information to determine whether a bona fide dispute exists.  <u>Id.</u>  To satisfy this burden, the parties must provide the following information: (1) a description of the nature of the dispute (<u>e.g.</u>, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work that the employees perform; (3) the employer's reasons for disputing the employees' right to the wages or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.  <u>Id.</u>

Here, plaintiff has not provided the requisite information.  Plaintiff claims that due to pre-shift work and defendant's rounding policies, defendant did not pay her and putative class members for hours that they actually worked and applicable overtime.  Defendant denies all liability, asserting that it paid its employees for all compensable work, which did not include activity during the rounding periods.  Accordingly, the heart of the parties' dispute is the computation of owed wages, which means that they must provide each party's estimate of the number of hours worked and the applicable wages.  <u>Id.</u>  With respect to the rounding policy, plaintiff claims that defendant owes her for approximately 174 minutes of work, and as best the Court can ascertain, defendant claims that it owes her nothing.  With respect to pre-shift work,

however, plaintiff does not proffer either party's estimate of the number of hours and applicable wages.

The same is true for the putative class members. Plaintiff has not provided her estimate of the number of hours that these employees worked or the applicable wages. She instead vaguely asserts that the total amount of unpaid wages for the settlement class is $161,834.43, which her counsel purportedly calculated using a "damage model." Memorandum In Support Of Plaintiff's Unopposed Motion For Preliminary Settlement Approval (Doc. #33) at 19; see also Osman Declaration (Doc. #33-4) at 2. Because plaintiff does not explain this "damage model," the Court cannot determine the basis for this monetary figure or, most importantly, how many hours' worth of pay defendant allegedly owes the putative class members. In short, for purposes of approving a FLSA settlement, the Court cannot identify a bona fide dispute about owed wages because it does not know what each party is claiming. See Christeson, 2019 WL 354956, at *5 (plaintiff established bona fide dispute by alleging that collective class members were entitled to up to ten hours per week of unpaid overtime at specified hourly rate).

**B.     Fair And Equitable**

Plaintiff asserts that the proposed settlement agreement is fair and equitable. To evaluate that issue, the Court consults several factors, including the following from the class action context: (1) whether the parties fairly and honestly negotiated the proposed settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. Christeson, 2019 WL 354956, at *6 (citing Rule 23(e), Fed. R. Civ. P.). These factors, however, are not determinative; the Court must also consider factors that are relevant to

the history and policy of the FLSA, such as whether the proposed agreement contains overly-broad releases or restrictive confidentiality provisions, or fails to provide recourse to opt-in members who object to the proposed settlement.[3]  Id. at *6—7; Barbosa v. Nat'l Beef Packing Co., LLC, No. 12-2311-KHV, 2014 WL 5099423, at *9 (D. Kan. Oct. 10, 2014).

For several reasons, plaintiff has not shown that the proposed settlement agreement is fair and equitable.

### 1.    Settlement Amount

Plaintiff has not proffered enough information to show that the gross settlement fund of $220,000 is adequate.  As the Court explained above, plaintiff has not explained the bases for her damage calculations.  She vaguely asserts that according to counsel's "damage model," the total amount of unpaid wages for the settlement class is $161,834.43.  Memorandum In Support Of Plaintiff's Unopposed Motion For Preliminary Settlement Approval (Doc. #33) at 19; see also Osman Declaration (Doc. #33-4) at 2.  Apparently, the "damage model" also revealed that with the addition of liquidated damages, the settlement class may be entitled to $311,433.72.  Osman Declaration (Doc. #33-4) at 2.  Because plaintiff has not elaborated on these numbers, the Court has no way of knowing whether the proposed settlement amount of $220,000 is fair and equitable.

### 2.    Confidentiality Restrictions

The proposed settlement agreement contains confidentiality restrictions.  This Court has made clear that such provisions "contravene[] the legislative purpose of the FLSA and undermine[] the Department of Labor's regulatory effort to notify employees of their FLSA rights."  Hoffman,

---

[3]    Plaintiff's motion does not mention any FLSA-specific factors that the Court consults to determine whether settlement agreements are fair and equitable.  If plaintiff submits a revised settlement for approval, she should identify such factors and explain whether the agreement complies with them.

2016 WL 2848919, at *3 (citations omitted).  Indeed, the Court has repeatedly echoed the "broad consensus that FLSA settlement agreements should not be kept confidential," and it will not approve an agreement that "prohibits and penalizes class members for sharing information about the settlement with others." Id. (citations omitted); Koehler v. Freightquote.com, Inc., No. 12-2505-DDC, 2016 WL 1403730, at *10 (D. Kan. Apr. 11, 2016) (Court "cannot approve an FLSA settlement that imposes a confidentiality clause"); Barbosa, 2014 WL 5099423, at *8.  Although other courts have been receptive to confidentiality provisions that are narrowly tailored to the media, this Court has not.  Compare Barbosa, 2014 WL 5099423, at *8 (invalidating confidentiality provision that prevented plaintiff or counsel from communicating with press about settlement or negotiations) with McGee v. Ann's Choice, Inc., No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (approving confidentiality clause that prohibited plaintiff from speaking with media, but permitted him to share settlement terms with "friends, family, employees, and individuals not affiliated with the media").

Here, the proposed settlement agreement provides that "until the filing of the papers in Court for approval" of the agreement, the parties and counsel agree to maintain confidentiality "except as to spouses, tax or financial advisors, attorneys, taxing agencies, or as otherwise required by law, and except as necessary to obtain court approval of this settlement." Confidential Settlement And Release Agreement (Doc. #33-1) at § 8(e).  At no time, however, can plaintiff, class members or counsel "contact the media about the settlement or respond to any inquiries by the media regarding the settlement, other than to state that the matter was amicably settled and that no Court found [defendant] liable." Id.  Because this provision contravenes the purpose of the FLSA, the Court does not approve it.  See Barbosa, 2014 WL 5099423, at *8 (declining to approve nearly identical confidentiality provision).

### 3.     Recourse For Objecting Class Members

The Court has consistently rejected settlements that do not offer recourse for opt-in class members who object to their settlement awards.  See Barbosa, 2014 WL 5099423, at *9 (record provided no information regarding "what recourse, if any, a class member would have if he or she disagrees with the pro rata determination"); see also McCaffrey v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 32436, at *4 (D. Kan. Jan. 5, 2011) (same).

Here, the proposed settlement agreement provides that during the designated consent period, members of the putative class action (KWPA claims) can (1) "opt-out of the Kansas Class and/or (2) "object to the portion of this Settlement Agreement pertaining to the Kansas Class Settlement Plaintiffs."  Confidential Settlement And Release Agreement (Doc. #33-1) at § 6(f).  By contrast, members of the putative collective action (FLSA claims) can only "file an opt-in consent to join the FLSA Litigation, for purposes of participating in the FLSA Litigation and this Settlement Agreement."  Id.  Accordingly, as far as the Court can tell, the agreement offers no recourse for members of the FLSA class who disagree with their allotted award.  The Court declines to approve this take-it-or-leave approach.  See Barbosa, 2014 WL 5099423, at *9; see also McCaffrey, 2011 WL 32436, at *4.

### 4.     Overly-Broad Release

Under the FLSA, plaintiff cannot agree to an overly-broad release as part of a wage settlement.  Christeson, 2019 WL 354956, at *6.  As the Court has noted, "pervasive, overly broad releases have no place in settlements of most FLSA claims."  Id. (quoting Bright v. Mental Health Res. Ctr., Inc., No. 10-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012)).  Instead, the FLSA requires employers to "pay, unconditionally, a worker's wages," and they cannot "use the settlement of FLSA claims to extract a general release of claims before paying over the wages."

Id.  This is unfair, and it "provides employers with a windfall should some unknown claim accrue to the employee at a later time."  Id.

Here, the proposed settlement agreement provides that plaintiff and defendant will "separately execute a mutually agreeable general release of all claims, known or unknown." Confidential Settlement And Release Agreement (Doc. #33-1) at § 7(a).  Although this does not cover claims that plaintiff did assert or could have asserted in her discrimination suit or those that cannot be waived as a matter of law, the general release immunizes defendant from all claims— presumably even those that are entirely unrelated to the FLSA.  In her motion, plaintiff states that this general release "justifies the service award amount."  Memorandum In Support Of Plaintiff's Unopposed Motion For Preliminary Settlement Approval (Doc. #33) at 21.  Accordingly, whether plaintiff receives compensation for the alleged FLSA violations is apparently contingent on her release of all claims against defendant, whether or not they are related to the FLSA.  This Court has made clear that defendant cannot "use the settlement of FLSA claims to extract a general release of claims before paying over the wages."  Christeson, 2019 WL 354956, at *6 (quoting Bright, 2012 WL 868804, at *4).

## II.     Class Action – KWPA Claims

Plaintiff asks the Court to (1) certify the putative KWPA class for settlement purposes only, (2) grant preliminary approval of the proposed settlement, (3) direct notice to the putative class members and (4) set a schedule and a hearing for final approval of the settlement and related deadlines.

Under Rule 23(e), Fed. R. Civ. P., the Court must approve class action settlements.  To do so, the Court must find that the settlement is fair, reasonable and adequate.  Bailes v. Lineage Logistics, LLC, No. 15-02457-DDC, 2016 WL 7242501, at *4 (D. Kan. Dec. 15, 2016).  This

typically occurs in two phases.  Id.  At phase one, the Court determines whether the proposed settlement is fair, reasonable and adequate.  Id.  If it is, the Court preliminarily approves the settlement and orders the parties to send notice of settlement to the class members.  Id.  This process allows the members to object to or opt out of the settlement.[4]  Id.

To determine whether a proposed settlement is fair, reasonable and adequate, the Court considers four factors: (1) whether the parties judge the settlement as fair and reasonable; (2) whether the parties fairly and honestly negotiated the proposed settlement; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.  Id. (citations omitted).

Here, plaintiff has not shown that the proposed settlement is fair, reasonable and adequate. Specifically, as the Court explained above, she has not proffered enough information for the Court to determine that the settlement fund of $220,000 is sufficient.  Plaintiff has not explained the bases for her damage calculations, but instead vaguely asserts that according to her counsel's "damage model," the total amount of unpaid wages for the settlement class is $161,834.43. Memorandum In Support Of Plaintiff's Unopposed Motion For Preliminary Settlement Approval (Doc. #33) at 19; see also Osman Declaration (Doc. #33-4) at 2.  Accordingly, the Court cannot determine whether the proposed settlement amount of $220,000 is fair, reasonable and adequate. Therefore, the Court does not approve the proposed settlement.

---

[4]    At phase two, the Court considers any objections, determines whether the proposed settlement is fair, reasonable and adequate and either approves or denies the settlement.  Bailes, 2016 WL 7242501, at *4.

Case 2:19-cv-02070-KHV-GEB  Document 34  Filed 05/13/20  Page 14 of 14


**III.     Conclusion**

Because plaintiff has not established a bona fide dispute or shown that the proposed settlement agreement is fair and reasonable, the Court does not approve the agreement. Accordingly, the Court declines to conditionally certify either putative class for settlement purposes, direct notice to putative class members or set a hearing final approval.

**IT IS THEREFORE ORDERED** that Plaintiff's Unopposed Motion For Preliminary Settlement Approval (Doc. #32) filed March 20, 2020 is **OVERRULED**.

Dated this 13th day of May, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-14-