IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ELIZABETH ELSTON, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 19-2070-KHV |
| HORIZON GLOBAL AMERICAS, INC., | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

On March 28, 2019, Elizabeth Elston, individually and on behalf of others similarly situated, filed an amended complaint against Horizon Global Americas, Inc., alleging that defendant failed to pay her for work hours and overtime. First Amended Complaint (Doc. #8). Plaintiff sues under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 et seq. On March 20, 2020, plaintiff filed an unopposed motion for preliminary settlement approval ("First Settlement Motion"). Plaintiff's Unopposed Motion For Preliminary Settlement Approval (Doc. #32). On May 13, 2020, the Court overruled that motion. Memorandum and Order (Doc. #34). This matter is before the Court on Plaintiff's Second Unopposed Motion For Preliminary Settlement Approval (Doc. #38) filed August 5, 2020 ("Second Settlement Motion"). For reasons stated below, the Court approves the proposed settlement but with a modified service award.

## Factual And Procedural Background

Highly summarized, plaintiff's amended complaint alleges the following:

Defendant is a designer, manufacturer and distributor of custom-engineered towing, trailering, cargo management and related accessory products. It employed plaintiff as a Warehouse

Associate from January 1 until April 4, 2018.  During this period, if an employee clocked in ten minutes or less before the start of his or her shift, defendant's computerized system rounded the clock-in time to the scheduled start time.  Additionally, when an employee clocked out at the end of his or her shift, the system rounded the clock-out time back to the nearest tenth of an hour.  As a result of these rounding policies, defendant did not pay plaintiff for all of the time that she actually worked.

Although preparation of equipment was an integral and indispensable part of their principal job duties, defendant encouraged employees to prepare all equipment before they clocked in. Accordingly, employees regularly performed compensable work 15 minutes before starting their scheduled shifts, but defendant did not pay them for it.

On March 28, 2019, plaintiff individually and on behalf of others filed an amended complaint alleging that defendant violated her rights under the FLSA and KWPA.  First Amended Complaint (Doc. #8).  Specifically, plaintiff asserted the following claims:

- Count 1: FLSA collective action claim on behalf of plaintiff and current and former employees of defendant who were in hourly positions and worked in the United States at any time during the last three years.

- Count 2: KWPA class action claim on behalf of plaintiff and current and former employees of defendant who were in hourly positions and worked in Kansas at any time during the last three years.

Id. at 8.

On April 11, 2019, defendant answered the amended complaint, denying all liability and asserting 12 affirmative defenses.  See Answer To First Amended Complaint (Doc. #9).  Among other defenses, defendant asserts that it paid employees for all compensable work, which did not include activity during the rounding periods.  Defendant alleges that it actually paid plaintiff and putative class members more time than they worked.  Id., ¶ 34.  On December 3, 2019, the parties

attended mediation.  Within a few days, they reached a settlement agreement on all claims, including those for both putative classes.

On March 20, 2020, plaintiff filed her first unopposed motion for preliminary approval of the settlement agreement (Doc. #32).  The agreement established two settlement classes.  As to the FLSA collective action, the putative settlement class included "[a]ll persons currently and formerly employed by Defendant Horizon in hourly positions who worked at any time during the last three (3) years within the United States, limited to those current and former hourly employees who used a time clock."  Confidential Settlement And Release Agreement (Doc. #33-1), § 2(d) (quotations omitted).  As to the KWPA class action, the putative settlement class included "[a]ll persons currently and formerly employed by Defendant in hourly positions who worked at any time during the last three (3) years within the State of Kansas, limited to those current and former hourly employees who used a time clock."  Id., § 2(e) (quotations omitted).

Under the proposed agreement, defendant agreed to pay a maximum gross settlement of $220,000, which included attorneys' fees ($85,000), costs up to $20,000, plaintiff's service award ($2,500), interest, liquidated damages or "payments of any kind," except those that defendant incurred.  Id., § 3(d).  Pursuant to a designated schedule, the parties planned to use a third-party administrator to send notices to putative class members.  During the consent period, members of the putative KWPA class action could (1) opt out of the Kansas Class and/or (2) "object to the portion of this Settlement Agreement pertaining to the Kansas Class Settlement Plaintiffs."  Id., § 6(f).  Members of the putative FLSA collective action could "file an opt-in consent to join the FLSA Litigation, for purposes of participating in the FLSA Litigation and this Settlement Agreement."  Id.  According to a specific allocation formula, the final members of each class would receive various payment amounts.

In exchange for these payments, plaintiff and the putative class members would agree to release certain claims. Plaintiff agreed to release all claims in the amended complaint against defendant and related companies, in addition to any claims that "reasonably could have arisen out of the same facts alleged, whether known or unknown, accrued through the Settlement Release Date, including but not limited to any and all claims under the FLSA." Id., § 7(a). Although this release did not cover claims that plaintiff did not bring or could not have brought in this litigation, plaintiff and defendant agreed to separately execute "a mutually agreeable general release of all claims, known or unknown." Id. This general release would exempt "those claims that have been or could have been asserted by [plaintiff] in the Individual Litigation, in favor of the Released Entities."[1] Id. The parties agreed that the general release "will not apply to any rights or claims that, by law, cannot be waived." Id.

The putative class members would release all claims in the amended complaint against defendant and related companies, "or claims that reasonably could have arisen out of the same facts alleged, whether known or unknown, accrued through the Settlement Release Date, including but not limited to any and all claims under the FLSA." Id., § 7(b). This release would not cover "claims that were not brought or could not have been asserted in the FLSA Litigation," and the putative class members "who do not sign and return their Consent, Claim Form and Release do not release any claims." Id.

---

[1] Under the proposed settlement, "Individual Litigation" means claims that "have been or could have been asserted by [plaintiff] in her individual capacity in" Elston v. Horizon Global Ams., Inc., 19-cv-02347-DDC-ADM, a separate case in which plaintiff claims that defendant discriminated against her based on disability and sex, created a hostile work environment and retaliated against her. Confidential Settlement And Release Agreement (Doc. #33-1) at 1. The proposed settlement is not settling the Individual Litigation. Accordingly, beyond these claims and those in the present FLSA/KWPA litigation, the parties' purported general release would immunize defendant from all claims.

The proposed settlement agreement also contained a confidentiality provision which provided that "until the filing of the papers in Court for approval" of the agreement, the parties and counsel agreed to maintain confidentiality except as to spouses, tax or financial advisors, attorneys, taxing agencies, or as otherwise required by law, and except as necessary to obtain court approval of this settlement.  Id., § 8(e).  At no time could plaintiff, class members or counsel "contact the media about the settlement or respond to any inquiries by the media regarding the settlement, other than to state that the matter was amicably settled and that no Court found [defendant] liable."  Id.

On May 13, 2020, for several reasons, the Court rejected plaintiff's first motion for preliminary settlement approval.  Memorandum and Order (Doc. #34).  First, the Court stated that plaintiff must provide the Court with further information so that it can verify that a bona fide dispute existed.  Id. at 7.  Specifically, plaintiff needed to provide further information and clarification regarding the nature of the dispute, the relevant claims and defenses and plaintiff's damage model.  Id. at 7–8.  Second, the Court found that plaintiff had not made a sufficient showing that the settlement was fair and equitable.  Id. at 8.  Plaintiff did not provide enough information about the damage calculations for the Court to determine if the settlement amount was sufficient.  Id. at 9.  It held that the portion of the confidentiality restriction that prohibited plaintiff or settlement class members from discussing the settlement with members of the media contravened the legislative purpose of the FLSA.  Id. at 9–10.  Furthermore, the settlement agreement did not offer recourse for members of the FLSA class who disagreed with their allotted award because it only offered them opt-in consent.  Id. at 11.  Moreover, plaintiff's individual general release of claims against defendant was overly broad because it required her to release all

claims against defendant, whether or not related to the FLSA, to receive compensation for alleged FLSA violations.  Id. at 11–12.

On August 5, 2020, plaintiff filed a second unopposed motion for preliminary settlement approval (Doc. #38).  Plaintiff requests that the Court (1) conditionally certify the proposed settlement class for settlement purposes only; (2) grant preliminary approval of the proposed settlement; (3) direct notice to be disseminated to settlement class members in the form and manner proposed by the parties; and (4) set a schedule and hearing date for final approval of the settlement and related deadlines.

## Analysis

Plaintiff asserts that the Court should approve the second proposed settlement agreement because it is fair, reasonable and beneficial to her, putative members of the FLSA collective action and putative members of the KWPA class action.  The Court separately addresses the proposed agreement as to each putative class and the proposed service award.

## I.    Collective Action – FLSA Claims

Plaintiff asserts that the Court should approve the proposed settlement of the FLSA collective action claims.  Under the FLSA, on behalf of herself and other "similarly situated" employees, plaintiff can bring a collective action against her employer for unpaid wages or unpaid overtime.  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013) (quoting 29 U.S.C. § 216(b)).  A FLSA lawsuit does not become a collective action unless other plaintiffs opt in by giving written consent.  Christeson v. Amazon.com.ksdc, LLC, No. 18-2043-KHV, 2019 WL 354956, at *3 (D. Kan. Jan. 29, 2019).  Accordingly, a named plaintiff cannot settle claims on behalf of putative class members who have not yet opted in.  Id. at *4.  Therefore, when putative class members have not received notice of the lawsuit and an opportunity to opt in, the named

plaintiff cannot seek final settlement approval.  Id.  Instead, she may ask the Court to (1) conditionally certify the proposed settlement class, (2) preliminarily approve the proposed settlement and (3) approve the proposed notice to putative class members.  Id. at *5.  If the Court does so, it will order the parties to send the approved notice to the putative class members, and it will establish a period during which putative class members may opt in.  Id.  When the opt-in period expires, the named plaintiff may file a motion for final collective action certification and final settlement approval.  Id.

Here, members of the putative collective action class have not received notice of the lawsuit and an opportunity to opt in.  Accordingly, plaintiff asks the Court to (1) conditionally certify the proposed settlement class, (2) preliminarily approve the proposed settlement and (3) approve the proposed notice to putative class members.

## A.    Conditional FLSA Collective Action Certification

The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated."  29 U.S.C. § 216(b).  The Court uses a two-step approach when determining whether plaintiffs are "similarly situated" for purposes of FLSA Section 216(b). Thiessen v. GE Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001).  First, a court typically makes an initial "notice stage" determination whether plaintiffs are "similarly situated."  Id. at 1102.  That is, the district court makes a conditional determination whether a collective action should be certified for purposes of sending notice of the action to potential class members.  See Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. Aug. 23, 2004).  For conditional certification at the notice stage, the court requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."

Thiessen, 267 F.3d at 1102 (quotations omitted).  The standard for certification at the notice stage is a lenient one that typically results in class certification.  See Brown, 222 F.R.D. at 679.

In the proposed settlement agreement, the putative collection class members are defined as "'[a]ll persons currently and formerly employed by Defendant Horizon in hourly positions who worked at any time during the last three (3) years within the United States,' limited to those current and former hourly employees who used a time clock." Settlement Agreement (Doc. #39-1), § 2(d). Plaintiff sufficiently alleges that the members were together the victims of the single policy and practice associated with defendant's rounding policy.  Thiessen, 267 F.3d at 1102.  The Court conditionally certifies the class.

### B.      Preliminary Approval Of The Proposed Settlement

Under the FLSA, parties must present a proposed settlement to the Court, which determines whether the settlement is fair and reasonable.  Christeson, 2019 WL 354956, at *5.  To approve the settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties and (3) the proposed settlement contains an award of reasonable attorney's fees.  Id.  The Court also must determine whether plaintiff's service award is fair and reasonable.  Enegren v. KC Lodge Ventures LLC, No. 17-2285-DDC, 2019 WL 5102177, at *7 (D. Kan. Oct. 11, 2019).  If the settlement agreement satisfies these requirements, the Court may approve it to promote the policy of encouraging settlement.  Christeson, 2019 WL 354956, at *5.

### 1.      Bona Fide Dispute

Plaintiff asserts that the parties have a bona fide dispute about whether defendant owes her and putative class members wages and overtime for work which they performed before their start times and during the rounding periods.  When parties request approval of an FLSA settlement,

they must provide sufficient information to determine whether a bona fide dispute exists.  Id.  To satisfy this burden, the parties must provide the following information: (1) a description of the nature of the dispute (e.g., a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work that the employees perform; (3) the employer's reasons for disputing the employees' right to the wages or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.  Id.

The Court could not identify a bona fide dispute about owed wages in the first settlement motion because the parties did not provide each party's estimate of the number of hours worked and the applicable wages.  Memorandum and Order (Doc. #34) at 7–8.  The Court therefore did not know what each party was claiming.  Id.

In the second settlement motion, plaintiff sufficiently demonstrated a genuine dispute whether, as a result of defendant's rounding policies and practices, defendant failed to pay plaintiff and putative class members for all compensable work.  See Memorandum In Support Of Second Settlement Motion (Doc. #39) at 13–17.  Defendant designs, manufactures and distributes a wide variety of high-quality, custom-engineered towing, trailering, cargo management and other related accessory products.  Defendant's employees work as hourly employees in a variety of capacities, including but not limited to production, receiving, inventory, shipping and distribution of orders.  Plaintiff asserts that putative class members are entitled to the wages for the rounded time because they were performing principal activities during the rounded time periods.  Defendant disputes the putative class members' right to these wages because it claims that the activities and tasks performed during the rounded time periods were not principal activities and therefore not

compensable pursuant to the law.  Assuming that rounded time is compensable, the parties do not dispute the computation of the wages owed.  Id. at 17–20.  Using defendant's time punch data for the putative class members, plaintiff's counsel calculated the total amount of unpaid wages as $161,834.81 ($323,669.62 if liquidated damages were applied).  Id.  The average weekly rounded time is 0.328 hours and with an average hourly rate of $17.40, the average best-day damages amount is approximately $8.35 ($16.70 with liquidated damages).  Id.

Based on this record, the Court finds that the parties have a bona fide dispute.

## 2.    Fair And Equitable

To determine whether the proposed settlement is fair and equitable, the Court considers several factors, including the following from the class action context: (1) whether the parties fairly and honestly negotiated the proposed settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.  Rule 23(e), Fed. R. Civ. P.  These factors, however, are not determinative; the Court must also consider factors that are relevant to the history and policy of the FLSA, such as whether the proposed agreement contains overly-broad releases or restrictive confidentiality provisions, or fails to provide recourse to opt-in members who object to the proposed settlement.  Christeson, 2019 WL 354956, at *6–7; Barbosa v. Nat'l Beef Packing Co., LLC, No. 12-2311-KHV, 2014 WL 5099423, at *9 (D. Kan. Oct. 10, 2014).

The first settlement motion failed to show that the proposed settlement agreement was fair and equitable because (1) plaintiff had not proffered enough information to show that the gross settlement fund of $220,000 was adequate; (2) the proposed settlement agreement contained

improper confidentiality restrictions; (3) the proposed settlement agreement did not offer recourse for opt-in class members who objected to their settlement awards; and (4) the proposed general release for plaintiff was overly broad because it immunized defendant from all claims, presumably even those entirely unrelated to the FLSA.  Memorandum and Order (Doc. #34) at 8–13.

Plaintiff's second settlement motion sufficiently identifies these factors and explains how the amended settlement agreement complies with them.  To show that the gross settlement fund of $220,000 is adequate, plaintiff explained the bases for her damage calculations.  As discussed above, plaintiff's counsel created a data model using defendant's time punch data for the putative class members, including clock-in/out, reported time (the paid time after application of the rounding policy/practice) and rates of pay for each workweek for each of the employees within the putative class during the relevant period.  Memorandum In Support Of Second Settlement Motion (Doc. #39) at 17.  Through analysis of the damage model, the parties agreed that on average, employees lost 3.94 minutes per shift assuming a five-day workweek at the average hourly rate of $17.40.  The resulting damage calculation revealed a maximum of unpaid wages in the amount of $161,834.81 (if liquidated damages were applied, the best-day damage calculation would be approximately $323,669.62).  Id. at 20.  In response to defendant's argument that none of the rounded time is compensable, the analysis considered the possibility that one, two or three minutes of rounded time each shift might be considered non-compensable.  Id. at 21.  The lowest estimate was $45,771.22 for actual unpaid wages ($91,542.44 in liquidated damages).  Id.  The gross settlement fund of $220,000.00 therefore represents approximately 68 per cent of the claim's best-day value, or between 37.8 per cent and 133.8 per cent of the fully-liquidated damage calculations possible in this matter, depending on what clock-in/out time the fact-finder finds compensable.  In light of the damage model, the gross settlement fund of $220,000 is adequate.

To address the Court's other concerns, the <u>Addendum To The Settlement And Release Agreement</u> (Doc. #39-2) makes the changes to the proposed settlement agreement as follows:

- <u>Confidentiality Restriction</u>: What was previously Section 8(e) of the Settlement Agreement, dealing with confidentiality, was amended to strike the language near the end of the subsection which formerly prohibited plaintiff, plaintiff's counsel and members of the settlement class from contacting the media.  <u>Id.</u>, § 2(f).

- <u>Recourse For FLSA Class Members</u>: Language throughout the Settlement Agreement (Sections 3(a), 3(c), 6(e), and 6(f)) was modified to allow the opt-in class members to object to their allotted settlement awards.  <u>Id.</u>, §§ 2(a)–(b), (d)–(e).  Correspondingly, the Notices were modified to reflect these changes.  <u>See generally</u> <u>Non-Kansas Notice</u> (Doc. #39-4); <u>Kansas Notice</u> (Doc. #39-3).

- <u>Plaintiff's Individual Release</u>: The language in the Settlement Agreement referencing plaintiff's "general release of all claims, known or unknown" was stricken from the Settlement Agreement.[2]  <u>Addendum</u> (Doc. #39-2), § 2(f).

To summarize, the parties (1) struck the improper confidentiality provision, (2) agreed to allow opt-in class members to object to their allotted settlement awards and (3) struck the overly-broad language requiring plaintiff to release all claims against defendant to receive compensation for the

---

[2]       Plaintiff struck the following language:

Plaintiff Elston and Horizon will separately execute a mutually agreeable general release of all claims, known or unknown, but specifically exempting those claims that have been or could have been asserted by Elston in the Individual Litigation, in favor of the Released Entities. The Parties agree that the general release will not apply to any rights or claims that, by law, cannot be waived.

<u>Addendum</u> (Doc. #39-2), § 2(f).

alleged FLSA violations.  The parties modified the notices to reflect these changes.  See Non-Kansas Notice (Doc. #39-4); Kansas Notice (Doc. #39-3).

The Court preliminarily finds that the amended proposed settlement is fair and equitable.

### 3.    Reasonable Attorney's Fees

The FLSA requires that a settlement agreement include an award of "a reasonable attorney's fee . . . and costs of the action."  29 U.S.C. § 216(b).  Though the Court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory.  Id.

To determine the fee award's reasonableness, the Tenth Circuit applies a hybrid approach, which combines the percentage of the fund method with the specific factors traditionally used to calculate the lodestar.  Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994).  This method calls on the Court to calculate a lodestar amount, which represents the number of hours reasonably expended multiplied by a reasonable hourly rate.  Id.  The hybrid approach also requires the Court to consider the factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  Those factors are (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.  Id. at 717–19.

Here, the proposed settlement agreement provides for attorneys' fees in the amount of $85,000 paid from the gross settlement fund of $220,000.  Settlement Agreement (Doc. #39-1), § 4(b).  Under the proposed settlement, defendant agreed to not oppose or object to plaintiff's request

for attorneys' fees and costs.[3]  See id.  The Court notes that when parties reach a settlement under which defendant agrees to not oppose attorney's fees that come from a common fund—which is the case here—the Court "skeptically examine[s] and analyze[s] the fee and cost proposal" because "defendant has no incentive to bargain for lower fees."  Hoffman v. Poulsen Pizza LLC, No. 15-2640-DDC, 2016 WL 2848919, at *4 (D. Kan. May 16, 2016); see also Bruner v. Sprint/United Mgmt. Co., No. 07-2164-KHV, 2009 WL 2058762, at *10 (D. Kan. July 14, 2009).  Additionally, the proposed settlement provides that unclaimed funds revert to defendant.  Settlement Agreement (Doc. #39-1), § 4(c).  Reversion of a large portion of the fund will affect the Court's determination of the reasonableness of the attorneys' fees.

In this case, both the lodestar method and the percentage of the fund method justify the attorneys' fees that plaintiff's counsel seeks.  Plaintiff's counsel reported 225.28 hours of work and documented a lodestar of $110,715.75.  Declaration of Matt Osman (Doc. #39-5) at 5. The fee request of $85,000 means that plaintiff's counsel is seeking less than the lodestar, resulting in a blended rate of approximately $332.97 per hour ($85,000/255.28 estimated hours) and a negative lodestar multiplier of 0.77 ($85,000/$110,715.75).  Under the percentage method, the award of $85,000 accounts for 38.6 per cent of the common fund.  When the proposed settlement creates a common fund, "attorneys' fees of one-third or thereabouts are generally deemed reasonable."  Foster v. Robert Brogden's Olathe Buick GMC, Inc., No. 17-2095-DDC-JPO, 2019 WL 1002046, at *6 (D. Kan. Feb. 28, 2019).  A fee award of 38.6 per cent is within the range of around one-third

---

[3]        "Consistent with applicable law, [defendant] shall not object to any application for attorneys' fees or costs made in accordance with this provision, provided, however, that if the Court questions the amount or allocation of costs (or any other issue related to costs), it shall be the sole responsibility of Class and Collective Action Counsel to argue in favor of said costs." Settlement Agreement (Doc. #39-1), § 4(b).

of the settlement fund.  For these reasons, the lodestar and percentage methods weigh in favor of finding the attorneys' fees reasonable.

The <u>Johnson</u> factors also support the attorneys' fee sought.  To summarize, plaintiff's counsel spent 225.28 hours investigating, filing, mediating and settling this case.  They spent an additional 30 hours on the addendum—which they did not include in the 225.28 hours—and they expect to spend an additional 40 hours finalizing the settlement.  <u>Memorandum In Support Of Second Settlement Motion</u> (Doc. #39) at 31–33.  Plaintiff's counsel concedes that the issues presented in this litigation are not particularly novel, but the complexity of the facts and their damage calculations required a high level of skill.  Plaintiff's counsel have considerable experience handling wage and hour matters and creating dynamic damage models,[4] and their requested attorneys' fee of 38.6 per cent, or approximately one-third, of the common fund is appropriate and customary.   <u>Foster</u>, 2019 WL 1002046, at *6.  The settlement class will receive approximately 75.7 per cent of plaintiff's counsel's calculation of their best-day actual damages, a realistic settlement value of this case during this stage of litigation.  Further, the requested $332.97 per hour falls within ranges that this Court has deemed reasonable for FLSA cases in the Kansas City area. <u>Seamands v. Sears Holding Corp.</u>, No. 09-2054-JWL, 2011 WL 884391, at *14–16 (D. Kan. March 11, 2011) (establishing the following attorneys' fee guidelines: $400 to $600 for experienced, veteran trial counsel; $250 to $400 for mid-level experienced attorneys; and $150 to $250 for lesser experienced attorneys).  The Honorable Julie A. Robinson previously awarded plaintiff's counsel, Matt Osman and Kathryn Rickley, attorney's fees that resulted in a blended hourly rate of approximately $408.82 in a similar FLSA case.  See <u>Order</u> (Doc. #23) filed

---

[4]        In his 12 years of practice, for example, Matthew Osman has represented over 2,700 employees against their employers and recovered over $15 million on behalf of plaintiffs. <u>Declaration of Matt Osman</u> (Doc. #39-5) at 5–7.

December 17, 2013 in <u>Jason Berry v. Farmers Bank & Trust, N.A.</u>, D. Kan. No. 13-cv-2020. Plaintiff's fee request is reasonable.

Because (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorney fees, the amended proposed settlement agreement is both fair and reasonable as to the collective action under the FLSA. The Court therefore grants preliminary approval of the settlement agreement's FLSA claims.

## II.     Class Action – KWPA Claims

Plaintiff asks the Court to (1) certify the putative KWPA class for settlement purposes only, (2) grant preliminary approval of the proposed settlement, (3) direct notice to the putative class members and (4) set a schedule and a hearing for final approval of the settlement and related deadlines.

Under Rule 23(e), Fed. R. Civ. P., the Court must approve class action settlements. Approving the parties' proposed settlement is appropriate where (1) the proposed class is suitable for certification, (2) the settlement terms are "fair, reasonable, and adequate" and (3) the proposed class notice satisfies due process requirements. Fed. R. Civ. P. 23(e), (a)–(b), (g); <u>see also</u> <u>Bailes v. Lineage Logistics, LLC</u>, No. 15-02457-DDC, 2016 WL 7242501, at *2 (D. Kan. Dec. 15, 2016). Additionally, the Court may grant plaintiff's request to approve her attorneys' fees and costs only if the requested amount is reasonable. <u>Gottlieb</u>, 43 F.3d at 482. The Court considers each requirement below.

### A.     Class Certification

Class certification is appropriate if, after rigorous analysis, the court finds that the proposed class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. <u>Wal-Mart</u>

Stores, Inc. v. Dukes, 564 U.S. 338, 350–51 (2011). To certify a class seeking damages for a common injury—as this proposed class does—plaintiff must meet six requirements: numerosity, commonality, typicality, adequacy, predominance and superiority. Four are found in Rule 23(a), and two come from Rule 23(b)(3). Namely, the court must find that

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical to the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). To satisfy Rule 23(b)(3), the court also must find that (1) common questions of law or fact predominate over individualized questions and (2) a class action is the superior method for adjudicating the controversy.

Here, the Court is persuaded that all six requirements are met. Numerosity, commonality and typicality are easily established. Preliminary estimates of the size of the Rule 23 class show that the putative class members—defendant's employees subjected to the same policies, practices and/or procedures regarding the rounding of their clock-in and clock-out times—is approximately 302 persons, making joinder impracticable. Declaration of Matt Osman (Doc. #39-5) at 2; see In re Aluminum Phosphide Antitrust Litig., 160 F.R.D. 609, 613 (D. Kan. 1995) (numerosity typically satisfied in District of Kansas by showing of at least 50 members). The question that the proposed settlement resolves is common to the entire class: did defendant's practice of rounding the KWPA class members' clock-in and clock-out times violate the KWPA? Because the class definition only includes defendant's hourly employees in the State of Kansas who used the time clock, answering this question for one class member answers the question for all class members. Wal-Mart, 564 U.S. at 350 (commonality exists if class-question "generate[s] common answers").

Also, plaintiff's claims are not only typical of other class members' claims but are identical to them.  Bailes, 2016 WL 7242501, at *2.

To satisfy the adequacy requirement, plaintiff must qualify as an adequate class representative.  To meet this mark, she must show that she is a member of the class, her interests do not conflict with those of other class members, and she can prosecute the action vigorously through competent counsel.  Id. at *3.  Here, plaintiff is a member of the class which she seeks to represent, and no discernible conflicts of interest exist between plaintiff and potential class members.  The record does not reveal any known impediments to prevent plaintiff from prosecuting the litigation.  Plaintiff's counsel have represented numerous class-action plaintiffs, leaving the Court with no concerns about counsel's competency.  Adequacy is satisfied.

The predominance requirement is met when the proposed class is "sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  In other words, if a common issue would lead the class to prevail or fail in unison, that one issue predominates and the predominance requirement is satisfied.  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 133 S. Ct. 1184, 1191 (2013).  Here, if plaintiff proves that defendant's rounding policy is unlawful, all class members would be entitled to an award of damages.  Predominance is satisfied.

Finally, when considering the requirement of superiority, courts consider four things: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  Because the parties here ask to certify a settlement class, the Court need

not consider the fourth consideration—ease of management.  Amchem, 521 U.S. at 620.  As for the other relevant considerations, this case presents what often is termed a negative-value suit: if class members pursued their claims individually, it would cost each one more to bring a lawsuit than they possibly could recover.  Bailes, 2016 WL 7242501, at *3.  For instance, plaintiff's estimated KWPA damages amount to less than $20.  Declaration of Kathryn Rickley (Doc. #39-6) at 1.  This economic truth creates a disincentive for class members to bring and prosecute separate actions.  The Court can find no evidence that other class members have filed suit against defendant on this case's theory, and consolidating the class members' claims in one case before one court is preferable to duplicative litigation.  Superiority is satisfied.

The Court conditionally certifies the KWPA class for settlement purposes only.

### B.      Preliminary Approval Of The Settlement

Before a class action may be settled, the Court must find that the settlement is fair, reasonable and adequate.  Fed. R. Civ. P. 23(e)(2).  If it is, the Court preliminarily approves the settlement and orders the parties to send notice of settlement to the class members.  Bailes, 2016 WL 7242501, at *4.  After class members have an opportunity to object to or opt out of the settlement, the Court considers any objections, determines again whether the proposed settlement is fair, reasonable and adequate and either approves or denies the settlement.  Id.

To determine whether a proposed settlement is fair, reasonable and adequate, the Court considers four factors: (1) whether the parties judge the settlement as fair and reasonable; (2) whether the parties fairly and honestly negotiated the proposed settlement; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after

protracted and expensive litigation.  Id.; see also Harlow v. Sprint Nextel Corp., No. 08-2222-KHV, 2018 WL 2568044, at *5–6 (D. Kan. June 4, 2018).

### 1.      Parties Deem The Settlement Fair And Reasonable

The first factor asks whether the parties deem the settlement fair and reasonable.  The Court previously ruled that plaintiff had not proffered enough information—namely the bases for her damage calculations—for the Court to determine that the settlement fund of $220,000 is sufficient. Memorandum and Order (Doc. #34) at 12–13.  The parties' second settlement motion addresses the Court's concerns by providing detailed information about the settlement fund calculations and the damage model.  See Memorandum In Support Of Second Settlement Motion (Doc. #39) at 17–21.  The parties estimated that the actual damages in this case are between approximately $45,771.22 and $161,834.81, so a net settlement fund of $122,500 is reasonable given these actual damage calculations.    The fully-liquidated damage outcomes are between approximately $91,542.44 and $323,669.62, so the $122,500 net settlement fund represents between 37.8 per cent and 133.8 per cent of the potential fully-liquidated damage outcomes in this case.  Considering that the alternative would be protracted and uncertain litigation that would only cost both parties more in attorney fees and time, the parties agreed that the settlement fund represents a fair and reasonable amount.  Accordingly, the first factor weighs in favor of preliminary approval.

### 2.      Fair And Honest Negotiation

The record makes it clear that the settlement was the result of arm's length negotiations, an extensive mediation, and considerable time and effort from the parties.  See, e.g., Declaration of Kathryn Rickley (Doc. #39-6) at 1.  Counsel for each party have class action experience, and the parties' mediator, Larry Rute, has significant experience mediating complex wage and hour litigation.  Id.  At the time of the mediation, the case had been in litigation for nearly nine months,

and the parties had ample time prior to mediation to assess the strengths and weaknesses of their cases.  Id. at 1–2.  The parties were in mediation for two days, negotiated the settlement's terms for another 16 days before finalizing a settlement term sheet, and continued back-and-forth negotiations for another two months before finalizing the settlement agreement.  Id. at 2.  This second factor weighs in favor of preliminary approval.

### 3.       Questions Of Law And Fact

Many questions of law and fact placed the ultimate outcome of this litigation in doubt.  The crux of the dispute—whether employees were performing compensable principal job activities during the contested time—presents questions of both law and fact.  The fact-finder would be tasked with determining what activities were being performed during the rounded periods of time.  The Court then would determine the compensability of these activities.  Questions of fact would exist as to whether employees were encouraged to perform and did perform certain activities before the beginning of their shifts.  After this determination was made, questions of law would exist as to whether the activities performed were "principal activities" and therefore compensable under the FLSA.  See 29 U.S.C. § 254(a).  Additionally, if this matter proceeded to trial, the parties still could file motions for summary judgment, and defendant still could dispute whether this case should be certified on a class-wide basis and whether defendant was liable for liquidated damages.  As shown, material questions of law and fact remained when the parties settled, so this factor supports preliminary approval.

### 4.       Immediate Recovery Compared To Future Relief

Courts judge the fairness of a proposed compromise by weighing plaintiffs' likelihood of success on the merits against the amount and form of the relief offered in settlement.  Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14 (1981).  Here, plaintiff's best-case scenario is class

certification and full recovery on the merits.   Plaintiff's worst-case scenarios are numerous, including (1) the class is not certified; (2) the class is decertified after preliminary certification; (3) summary judgment is granted to defendant; (4) plaintiff loses at trial; or (5) the appellate court overturns the grant of certification or the award of damages at a later stage.   Given the important questions of law and fact existing in this litigation, the result is not assured for either side, and both sides face significant risk of an all-or-nothing victory or defeat.   The value of immediate and certain recovery outweighs the value of protracted and costly litigation in which the settlement class may recover nothing.   The fourth factor weighs in favor of preliminary approval.

All four factors support preliminary approval of the parties' proposed settlement agreement.   The Court therefore grants preliminary approval of the settlement agreement's KWPA claims.

## III.      Preliminary Approval Of Service Award

The parties also ask that the Court preliminarily approve the representative plaintiff's service award payment of $2,500 and determine whether it is fair and reasonable.[5]   Enegren, 2019 WL 5102177, at *7.

The amount of the requested service award represents 1.13 per cent of the gross settlement amount of $220,000.   According to her own estimate, Elston spent approximately 41.5 hours on this case, amounting to an award of $60.24 per hour if she receives the proposed $2,500. Memorandum In Support Of Second Settlement Motion (Doc. #39) at 55.   Elston's contributions included meeting and communicating with counsel, responding to the Court's interrogatories, preparing for and attending mediation and reaching out to witnesses.   Declaration of Elizabeth Elston (Doc. #39-7) at 1.   Plaintiff's counsel also claim that Elston took a "reputational risk" by

---

[5]      In the initial Memorandum and Order (Doc. #34), the Court declined to address the reasonableness of plaintiff's proposed service award.

attaching her name to litigation against her employer because future employers might not want to hire her after learning of her involvement in such litigation.  Memorandum In Support Of Second Settlement Motion (Doc. #39) at 56.  Beyond the bare claim, neither Elston nor counsel provide any evidence of reputational risk.  See id.; Declaration of Elizabeth Elston (Doc. #39-7).  In addition, as noted above, this is not plaintiff's only pending lawsuit against her employer.

The Court recognizes plaintiff's contributions, but a service award amounting to $60.24 per hour is out of line with awards in this district.  The Court has consistently found that $20 per hour is a reasonable incentive fee in similar FLSA cases.  See, e.g., Foster, 2019 WL 1002046, at *7 (D. Kan. Feb. 28, 2019) (denying $46 per hour incentive fee); Barbosa v. Nat'l Beef Packing Co., LLC, No. 12-2311-KHV, 2015 WL 4920292, at *6 (D. Kan. Aug. 18, 2015) (reducing requested service awards to $20 per hour); Peterson v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 3793963, at *8 (D. Kan. Aug. 25, 2011) (denying $26 per hour incentive fee and instead awarding $20 per hour incentive fee).

The Court therefore reduces plaintiff's incentive award to $830, or $20 per hour for her 41.5 hours of work.  Plaintiff has not shown any basis for an enhanced incentive award.  Accordingly, the Court awards Elston $830, with the remaining portion of the proposed $2,500 service award returned to the settlement fund to be dispersed to all opt-in plaintiffs under the settlement agreement.

**IT IS THEREFORE ORDERED** that Plaintiff's Second Unopposed Motion For Preliminary Settlement Approval (Doc. #38) filed August 5, 2020 is **SUSTAINED in part**.  The Court preliminarily certifies the proposed class and preliminarily approves the parties' settlement agreement with the modified service award of $830.  The Court approves the form and the content of the notices attached to the settlement agreement as Exhibit C, Kansas Notice (Doc. #39-3), and

Exhibit D, <u>Non-Kansas Notice</u> (Doc. #39-4).  The parties shall immediately begin the notice plan as described in section 6 of the <u>Settlement Agreement</u> (Doc. #39-1) filed August 5, 2020.

On or before March 18, 2021, the parties shall file a motion and memorandum in support of final settlement approval, as provided in section 5 of the <u>Settlement Agreement</u> (Doc. #39-1) filed August 5, 2020.

On May 17, 2021, at 1:30 p.m., the Court will hold a fairness hearing to consider final approval of the proposed settlement.  The hearing may be reset or adjourned at any time by order of this Court without further notice other than publicly available notice through ECF.

Dated this 28th day of October, 2020 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge