**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ELIZABETH ELSTON,**<br>**individually, and on behalf of all others**<br>**similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HORIZON GLOBAL AMERICAS,**<br>**INC.,**<br><br>**Defendant.** | **Civ. No.: 2:19-cv-02070-KHV-GEB** |

<u>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL
AND SUGGESTIONS IN SUPPORT THEREOF**</u>

## Contents

I.    INTRODUCTION ..................................................................................................................1

II.    SUMMARY OF THE CASE AND SETTLEMENT ...........................................................4

III.    ADMINISTRATION OF THE NOTICE ............................................................................7

A.    Contents of the Notice ........................................................................................................8

B.    Distribution of the Notice ...................................................................................................8

IV.    ARGUMENT .......................................................................................................................9

   A.    Approval of the Opt-Out Class Settlement. .......................................................................9

     1.    The Settlement is Fair, Reasonable, and Adequate..........................................................10

     a.    The Proposed Settlement was Fairly and Honestly Negotiated ......................................11

     b.    Serious Questions of Law and Fact Exist .......................................................................12

     c.    The Value of An Immediate Recovery Outweighs Potential Future Relief.....................13

     d.    All Parties Favor the Settlement. .....................................................................................13

   B.    Approval of the FLSA Class Settlement and Final Certification of the Settlement Class. ..........................15

     e.    The Customary Fee ...........................................................................................................24

     f.    Whether the Fee is Fixed or Contingent ..........................................................................24

     g.    Time Limitations Imposed by the Client or the Circumstances .......................................25

     h.    The Amount Involved and the Results Obtained ..............................................................25

     i.    The Experience, Reputation, and Ability of the Attorneys ..............................................26

     j.    The "Undesirability" of the Case ....................................................................................26

     k.    The Nature and the Length of the Professional Relationship with the Client ..................26

     l.    Awards in Similar Cases ..................................................................................................27

V.    CONCLUSION ..................................................................................................................29

**<u>Exhibit List</u>**

Ex. 1 – Simpluris Declaration
Ex. 2 - Proposed Final Approval Order

## I.    INTRODUCTION

On March 20, 2020, the Plaintiff first moved the Court for preliminary settlement approval. On May 13, 2020, the Court issued an Order overruling the Motion on the basis that Plaintiff had not submitted sufficient information to warrant preliminary approval. On August 5, 2020, Plaintiff filed a new motion for preliminary approval designed to provide the Court with additional detail that the Court indicated as lacking in its May 13th Order. On October 28, 2020, the Court sustained Plaintiff's motion, in part, approving all aspects of the settlement apart from modifying the amount of the service award to the Plaintiff.

The Court's October 28th Order found that the settlement reached in this matter was fair, reasonable, and deserving of preliminary approval. In reaching this decision, the Court found that 1) the Parties' belief in the fairness and reasonableness of the settlement supported preliminary approval; 2) the settlement was negotiated in a fair and honest manner, supporting preliminary approval; 3) the settlement resolves several contested issues of law and fact; and 4) the value of the immediate and certain recovery provided in the settlement outweighs the value of a protracted and costly litigation. The Court further determined that Plaintiff's requested attorneys' fees were reasonable, however, the Court found the requested Service Award for the Named Plaintiff to be too high and reduced the award accordingly. Taken together, the Court found that settlement should be granted preliminary approval and directed the Parties to proceed with issuance of notice to the class and collective action members and scheduled a final approval hearing for May 17, 2021. The instant motion is in compliance with the Court's request that the parties submit a motion for final approval on or before March 18, 2021.

Following the Court's October 28, 2020 order, the Parties utilized a third-party administrator, Simpluris, Inc. ("Simpluris" or "Administrator"), to distribute the Class Notices to the Class and Collective Members (jointly referred to as "Settlement Classes"). In this matter, there are two separate

class notices: 1) Kansas Class Notice – this notice was mailed to all individuals who worked for Defendant within the state of Kansas during the class period; and 2) Non-Kansas Class Notice – this notice was mailed to all individuals who worked for Defendant outside the state of Kansas during the class period. The Kansas Class Notice provided putative class members the opportunity to join the Collective Fair Labor Standards Act ("FLSA") Class and the opportunity to opt-out of the Rule 23 Kansas Wage Payment Act ("KWPA") Class. On the other hand, the Non-Kansas Class Notice only provided putative class members with the opportunity to join the Collective FLSA Class as they were ineligible to join the Rule 23 KWPA Class.

The Court-approved notices were mailed on December 16, 2020 to the putative class members of each class, informing them of the relevant deadlines and the May 17, 2021 Final Approval Hearing. Simpluris Declaration, ¶ 7 (Ex. 1). A reminder mailing was submitted on January 15, 2021. *Id.* The putative class members' deadlines were set to January 30, 2021. *Id.* The Kansas Class Notice was mailed to 302 putative class members, forty-three were returned as undeliverable. *Id.* at ¶ 8. Of those forty-three undeliverable mailings, thirty-six were remailed and seven remain undeliverable. *Id.* The Non-Kansas Class Notice was mailed to 181 putative class members, ten were returned as undeliverable. *Id.* at ¶ 9.  Of those ten undeliverable mailings, six were remailed and 4 remain undeliverable. *Id.* Out of the total 483 notices mailed to the putative class members, 135[1] valid consents were received, and zero opt-out or objections were received. *Id.* at ¶ 11.   The Claims Administrator has received one deficient claim because the form was not signed. *Id.* The deficient submission is currently pending while the Administrator attempts to contact the putative class member. *Id.* The Parties have reached an agreement to permit this particular deficient submission to be resolved at any time prior to ten days before the deadline for issuance of the final payments to the class members. *Id.*

---

[1] Five of the 135 valid consents were actually deemed late by the Claims Administrator. However, the Parties were able to reach an agreement to accept all late filings postmarked within thirty days of the deadline, March 2, 2021.

The class notices provided the putative class members with all important information related to the settlement of this matter. For example, all putative class members of the Settlement Classes were advised in their notices of the estimated amount they would receive under the settlement. Simpluris Declaration, ¶ 4 (Ex. 1). All members of the Settlement Classes were also informed that the settlement fund of Two-Hundred and Twenty-Thousand Dollars and No Cents ($220,000.00) would be allocated as follows: (1) Net Settlement Proceeds eligible for distribution among the Settlement Classes in the amount of at least One-Hundred Twenty-Two Thousand Five Hundred Dollars and No Cents ($122,500.00); (2) Class Counsel would receive attorneys' fees of no more than Eighty-Five Thousand Dollars and no cents ($85,000.00) under the settlement; (3) representative plaintiff Elizabeth Elston would receive a service award of no more than Twenty Five Hundred Dollars and no cents ($2,500.00); and (4) settlement administration costs incurred of no more than Ten Thousand Dollars and No Cents ($10,000.00).[2] *Id.* at p. 2. Even with the error described in Footnote Two, causing the settlement to appear slightly less beneficial to class members,[3] the proposed settlement has been well received by the class members and no class members objected to the settlement and no class members opted out.

Upon final approval, the Net Settlement Proceeds will flow directly to all participating class members without any further reduction for attorneys' fees, costs, or settlement administration expenses. This is money these class members would never have received but for this lawsuit. As such, this settlement provides exceptional relief now, without the additional risk and expense of continued

---

[2] Inadvertently, these amounts were not revised in accordance with the Court's preliminary approval of the settlement on October 28, 2020. As a result, the settlement is actually more favorable to the class members than identified in the notice and the amounts stated as Net Settlement Proceeds are actually higher. The correct distribution of the class amounts are as follows: (1) Net Settlement Proceeds are One Hundred Twenty-Four Thousand One Hundred Seventy Dollars and No Cents ($124,170.00); (2) Attorneys' Fees and costs are Eighty-Five Thousand Dollars and No Cents ($85,000); (3) Service Award to Plaintiff Elston in the amount of Eight Hundred Thirty Dollars and No Cents ($830.00); and (4) Settlement Administration Costs in the amount of Ten Thousand Dollars and No Cents ($10,000.00).

[3] The error caused the Net Settlement Proceeds to be disclosed as being $1,670 less than what the Court had approved. If distributed evenly across all 483 putative class members, it would result in an approximately $3.45 increase in the payments for each of the putative class members.

litigation, trial, and appeal.  Accordingly, Plaintiff now moves for the Court to enter the accompanying Proposed Final Approval Order (Ex. 2) ("Proposed Final Order") fully resolving this matter. The accompanying Proposed Final Order (Ex. 2): (1) finally certifies the Rule 23 and FLSA Settlement Classes for purposes of this settlement, (2) finds that the Settlement Agreement is fair, reasonable, and adequate for the purposes of Rule 23 and the FLSA, (3) orders that Settlement Class members receive their payments in accordance with the Settlement Agreement, and (4) orders that the Class and Collective Action Members be bound by the release of claims contemplated by the Settlement Agreement.

## II.     SUMMARY OF THE CASE AND SETTLEMENT

On February 7, 2019, named Plaintiff Elizabeth Elston ("Plaintiff") filed, collectively and as a class action, claims against defendant Horizon Global Americas, Inc. ("Defendant") for: (1) violations of the Fair Labor Standards Act ("FLSA"); and (2) violations of the Kansas Wage Payment Act ("KWPA").[4] These claims arose out of the allegations that Defendant failed to pay Plaintiff, and others similarly situated, for hours and overtime pay in accordance with state and federal law. Plaintiff alleged that she, and other members of the Settlement Class, were not compensated properly for all hours worked due to Defendant's policy or practice of using a computerized rounding system whereby an employee's time would be rounded to their respective start time if they clocked in ten minutes or less before the start of their shift. Additionally, Plaintiff alleged that Defendant's system would round the employees' clock out time to the nearest tenth of an hour. Finally, Plaintiff also alleged that Defendant's policies encouraged employees such as herself to prepare all equipment before clocking in, and that this activity constituted an integral and indispensable part of the Plaintiff's principle job duties that Plaintiff and others similarly situated were not compensated for. Plaintiff alleged, as a result

---

[4] Plaintiff amended her complaint on March 28, 2019.

of the described policies, that Defendant had denied Plaintiff, and others similarly situated, proper compensation under the FLSA and the KWPA.

On April 11, 2019, Defendant filed an amended answer, denying all liability and asserting twelve affirmative defenses. Thereafter, the parties exchanged initial disclosures before attending a Court-ordered scheduling conference on June 12, 2019. During that conference, the Honorable Magistrate Judge Birzer stayed discovery and ordered the Plaintiff to respond to the Court's Interrogatories and for Defendant to produce documents related to the hours worked and payroll records of Plaintiff, along with all policies, practices, procedures and/or guidelines that relate to the rounding of employees' clock-in and clock-out times. The Court further ordered the Parties to engage in good faith settlement discussions no later than August 28, 2019.

The Parties later reached a separate agreement in which Defendant agreed to produce documents related to payroll and hours worked for all putative class members in order to facilitate a potential global resolution of all class and collective action members' claims. The Parties sought a stay of the discovery deadline so that the Parties had adequate time for Defendant to produce the additional information related to the putative class and collective action members and for the Parties to conduct analysis of the records in preparation for a global mediation of the claims. The Parties worked diligently to exchange the negotiated documentation and on December 3, 2019, the Parties attended an in-person mediation conducted by Larry Rute, an experienced mediator and co-founder of Associates in Dispute Resolution. Although the Parties did not reach a resolution during that mediation, the Parties did make considerable progress, and continued to negotiate, reaching a resolution a few days after conclusion of the in-person mediation. The Parties vigorously negotiated their respective legal positions, culminating in the settlement agreement that was presented to this Court for preliminary approval and which was ultimately preliminarily approved. The preliminarily approved Settlement Agreement represents the resolution of a bona fide dispute among the Parties

that will provide closure for all putative class and collective action members and for the Defendant. The Parties agree that the terms of the Settlement Agreement are fair, reasonable, and that the agreement should be approved by the Court in this matter.

The Plaintiff and Class Counsel believe the claims asserted in the litigation have merit and that the evidence developed to date supports the claims asserted. Plaintiff and Class Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing a complex case like this action, and believe that the settlement confers substantial and meaningful benefits upon the members of the settlement class now. Defendant adamantly denies that Plaintiff's claims have any merit and denies any wrongdoing but wishes to avoid the uncertainty, risk, and business disruption associated with further litigation.

The Settlement preliminarily approved of by the Court calls for the Defendant to pay the mediator's fees and an all-cash amount known as the Gross Settlement Amount ("GSA") of Two Hundred Twenty Thousand Dollars and Zero Cents ($220,000.00) in full and complete settlement of the action. *Settlement Agreement*, ¶ 3(d) (Doc. 39-1). The GSA is a common fund that will pay out Settlement Class member settlement awards, Plaintiff's reasonable attorney fees and expenses, claims administration costs, penalties and interest, and representative service awards for Plaintiff. *Id.*

The main terms of the settlement are as follows:

- The Settlement creates and makes available a common fund of $220,000.00, including attorneys' fees and costs, to settle the claims of the approximately 483 class members;

- Detailed notices were provided to class members after preliminary approval of the settlement apprising class members of, among other things:

  - their estimated individual settlement amounts,
  - their right to opt out[5] of the settlement if they so wish,
  - the procedure for claiming monies and/or objecting to the settlement;
  - and all other rights affected by the proposed settlement.

---

[5] The non-Kansas Notice did not permit the right to opt-out of the settlement because non-Kansas employees were not part of the Rule 23 class.

- Each of the Kansas Class Members who submits a Claim Form will receive compensation pursuant to the Settlement Agreement and will release all claims under state and/or federal law that were alleged in this Litigation;

- Each of the Non-Kansas Class Members who submit a Claim Form will receive compensation pursuant to the Settlement Agreement and will release all claims under federal law that were alleged in this Litigation;

- Attorneys' fees of no more than $85,000.00 to be paid to Plaintiff's Counsel;

- Costs of no more than $10,000.00 to be paid to the Claims Administrator, Simpluris;

- A Service Award for Plaintiff Elston in the amount of $830.00.[6]

The Joint Stipulation of Confidential Settlement and Release Agreement ("Settlement Agreement") was previously filed in this matter. (Doc. 39-1).

## III.    ADMINISTRATION OF THE NOTICE

Constitutional due process requires that absent class members receive the best notice practicable, reasonably calculated to inform them of the pendency of the action and affording them the opportunity to object. *See* ***Phillips Petroleum Co. v. Shutts***, 472 U.S. 797 (1985); Fed. R. Civ. P. 23(c)(2)(B). However, as to the mechanics of the process, "[c]ourts retain discretion over the content and form of notice." ***Harlow v. Sprint Nextel Corp.***, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *25 (D. Kan. June 4, 2018) (quoting ***Gottlieb v. Wiles***, 11 F.3d at 1013 (10th Cir. 1993)).

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any

---

[6] Although, the original Settlement Agreement provided for a service award of $2,500, the Court preliminarily approved a reduced service award of $830.00 for Plaintiff Elston. (Doc. 41).

subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)).

### A.    Contents of the Notice

In ruling on the Parties' preliminary settlement approval motion, this Court already evaluated the notice. This Court approved the parties' proposed notice, finding that it was "fair and equitable." (Doc. 41). Accordingly, this Court already held that the content of the notice constituted the best notice practicable under the circumstances and satisfied all procedural due process requirements.

### B.    Distribution of the Notice

Similarly, in its Order granting preliminary settlement approval, the Court approved the Agreement's proposed method for disseminating the notice, directing the parties to proceed with the issuance of notice pursuant to the Settlement Agreement. (Doc. 41). The Parties have now disseminated the notices as directed, which was overseen by the Administrator. *See generally* Simpluris Declaration (Ex. 1).

In its order granting preliminary approval to the parties' Settlement Agreement, the Court approved of and/or ordered the following timeline for the resolution of this matter:

| Event | Deadline |
|---|---|
| Defendant to provide Third-Party Administrator with Confidential Class List and Work Weeks of Each Class Member | 14 Days After Preliminary Approval of Settlement (November 11, 2020) |
| Third-Party Administrator to send Settlement Allocation to Defendant and Plaintiffs' Counsel | 14 Days After Receipt of Data (November 25, 2020) |
| Parties to Approve or Contest the Settlement Allocation | 7 Days After to Parties Receive Settlement Allocation (December 2, 2020) |
| **Notice Deadline** – Settlement Administrator must send notice to class members | 14 Days Parties' Approval of Settlement Allocation (December 16, 2020) |
| **Response Deadline** – Response Deadline for Class Members (opting out, disputing information, and objecting) | 45 Days After Notice of Settlement is Mailed (January 30, 2021) |
| Motion for Final Approval | March 18, 2021 |
| Settlement Approval Hearing | May 17, 2021 at 1:30 PM |

No delays occurred and the Parties, along with the Settlement Administrator have implemented the above schedule in accordance with the Court's order. *Id.*

Of the 483 Class Notices, fifty-three were returned. Simpluris Declaration, ¶¶ 8-9 (Ex. 1). The third-party administrator used a skip trace to locate each individual whose notice was returned as undeliverable without a forwarding address and was able to locate updated addresses and re-mail forty-two of the returned notices. See *Id.* Of the notices that were initially undeliverable, eleven remained undeliverable. *Id.*

The notices provided instructions on how class members could object to the settlement. Doc. 39-3, 39-4, *see also* Exhibit A to Simpluris Declaration (Ex. 1). The Administrator did not receive any objections to the settlement. Simpluris Declaration (Ex. 1). The notice also provided instructions on how class members could exclude themselves from the settlement. Doc. 39-3.[7] No exclusions were received. Simpluris Declaration (Ex. 1). In sum, out of the 483 Class Members who were mailed notices, 135 have submitted valid claim forms, zero have opted out, eleven were undeliverable, and zero objected. *Id.*

The Parties' notice plan, which this Court approved, and the Administrator implemented, constituted the best notice practicable to inform the class members of their rights and options under the settlement.

## IV.    ARGUMENT

### A.  Approval of the Opt-Out Class Settlement.

Rule 23(e) requires a court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination,

---

[7] The Non-Kansas Notice does not provide for an exclusion mechanism because it is only and opt-in collective action, which provides for exclusion simply by not submitting a Claim Form. Doc. 39-4.

the Court considers the "settlement agreement, taken as a whole. . ." ***In re Dep't of Energy Stripper Well Exemption Litig.***, 653 F. Supp. 108, 116 (D. Kan. 1986).

With respect to a Rule 23 class settlement, "[t]he settlement approval process typically occurs in two phases. First, the court considers whether preliminary approval of the settlement is appropriate." William B. Rubenstein, **Newberg on Class Actions** § 13:10 (5th ed.). "If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement." ***Tripp v. Berman & Rabin, P.A.***, No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, at *5 (D. Kan. July 6, 2016) (quoting ***Freebird, Inc. v. Merit Energy Co***, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *4 (D. Kan. Dec. 6, 2012)). The first step was completed on October 28, 2020 when the Court granted preliminary approval of the settlement and ordered notice distributed to the class.

In this second, final step, the Court again determines whether the settlement is fair, reasonable, and adequate, "taking account of all of the information learned during [the notice] process, the court decides whether or not to give 'final approval' to the settlement." ***Tripp*** at *5-6 (quoting **Newberg on Class Actions** § 13:10). "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." ***Casey v. Coventry Healthcare of Kansas, Inc.***, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012). Having provided the notice pursuant to the Court-approved plan, and receiving no Class Member objections, the Plaintiffs request that the Court grant final approval of the settlement.

### 1.  The Settlement is Fair, Reasonable, and Adequate.

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." **Newberg on Class Actions** § 11.41. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."

10

*Harlow v. Sprint Nextel Corp*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *21 (D. Kan. June 4, 2018) (quoting *Marcus v. Kansas Dep't of Rev.*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002)). Further "[t]he law favors compromise and settlement of class action suits." *Geiger v. Sisters of Charity of Leavenworth Health Sys.*, No. 14-2378, 2015 U.S. Dist. LEXIS 97362, at *5 (D. Kan. July 27, 2015); *see also* *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

"The Tenth Circuit has set forth four non-exclusive factors which this court must consider in evaluating whether the proposed settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1256 (D. Kan. 2006) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). These factors weigh in favor of finding the final settlement fair, reasonable, and adequate in this case.

### a. The Proposed Settlement was Fairly and Honestly Negotiated

There is no indication or evidence of fraud or collusion in the settlement. Indeed, this case has been diligently prosecuted and defended throughout the litigation. The Settlement in this matter was fairly and honestly negotiated. It was reached, in large part, due to the efforts and experience of mediator Larry Rute. At the time of the mediation, the parties had been litigating this dispute for nearly

11

10 months. During that time, the parties had exchanged initial disclosures, responded to the Court's interrogatories and document production requests, and exchanged significant class data to permit negotiations of the class and collective action claims. By the time of the mediation, the parties had ample time to assess the strengths and weaknesses of their cases. The litigation was at all times hard-fought, and the negotiations were likewise hard-fought and at arm's-length. Further, in Plaintiff's Counsel's experience, when compared with similar litigation, the relief to the class is consistent with other settlements which have been approved at this stage of litigation.

### b. Serious Questions of Law and Fact Exist

There are serious questions of law and fact that place the ultimate outcome of this litigation in doubt. In Plaintiff's Counsel's view, the settlement provides substantial and meaningful benefits to the class, especially when one considers the attendant expense, risks, difficulties, delays, and uncertainties of litigation. After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of Plaintiff's claims and Defendant's defenses. Consequently, the Parties had sufficient knowledge to make an informed assessment on the merits of the litigation. Plaintiff's Counsel believes the settlement is fair, reasonable, and adequate based on their knowledge of the case, applicable law, and their experience in similar actions.

The Parties naturally dispute the strength of the Plaintiff's case, and the settlement reflects the Parties' assessments of the worst-case and best-case scenarios; weighing the likelihood of various potential outcomes.  Plaintiff's best-case scenario is class certification and full recovery on the merits. Plaintiff's worst-case scenarios are numerous, including: (1) the class is decertified after preliminary certification; (2) summary judgment is granted to Defendant; (3) Plaintiff loses at trial; or (4) even if the Plaintiff prevails at trial, Defendant appeals, and the appellate court overturns the grant of certification or the award of damages.  In short, the result is not assured for either side. The details of the settlement involved extensive negotiation and compromise. This reflects the Parties' zealous

representations of their respective positions on the claims and defenses in this case. This Settlement likewise reflects the difficulties, costs, and risks to both parties associated with protracted litigation.

Even if this case were to proceed to trial and Plaintiff prevailed on the question of liability, substantial questions would remain as to the measure of damages and the entitlement of each Settlement Class member to recover for alleged unpaid straight time and overtime. Such questions would involve substantial calculations. Although Plaintiff strongly believes in the merits of her claims, these uncertainties make it extremely difficult to predict how a jury would ultimately view this case.

### c. The Value of An Immediate Recovery Outweighs Potential Future Relief

The Settlement ensures Class Members a certain, immediate, and proportional recovery for their alleged injuries as opposed to a speculative, protracted, and uncertain recovery. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation and weighs in favor of approving the Settlement. The benefits to the Settlement Class of immediate and certain recovery cannot be overstated in this case. The Settlement therefore represents an efficient and equitable resolution to the conflicts in this litigation.

### d. All Parties Favor the Settlement.

The final factor asks whether the parties deem the settlement fair and reasonable. *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *21 (D. Kan. June 4, 2018). When a court is evaluating a proposed settlement that "is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. . . " and that "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus v. State of Kan.*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002)

Here, Plaintiff and members of the Settlement Classes had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case,

13

and who have negotiated many such class and collective action settlements. *See* **Osman Declaration** (Doc. 39-5). Likewise, Defendant also retained experienced counsel that could successfully navigate complex litigation in the wage and hour context and have negotiated many such settlements. **Id.**

The negotiations were hard-fought and at arm's-length. In Plaintiff's Counsel's view, the settlement provides substantial and meaningful benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, uncertainties of litigation, trial, and post-trial proceedings. **Id.** Specifically, according to Plaintiff's Counsel's view, the common settlement fund represents approximately 68% of the putative class members best day damages and the Net Settlement Fund represents approximately 75.7% of their unliquidated best day damages, representing a reasonable compromise given the risk attendant with continued litigation. **Id.** Such an amount reflects a realistic settlement value of this case during this stage of litigation. The sum is reasonable considering the further expense associated with litigating this action in the event that the matter did not to settle. If the litigation were to continue, Plaintiff, Defendant, and the Court would all face the prospect of dealing with further costly discovery, motions for summary judgment, disputes over class certification, factual disputes relating to the quantity and value of uncompensated time, overtime calculations, and many other attendant difficulties. As is often the case in such complicated litigation, no result is certain. The immediate value conferred by settlement to the Settlement Classes strongly outweighs the speculative recovery of uncertain value in the future.

The reaction of the members of the Settlement Classes has been unanimously supportive of the settlement. As noted above, of the approximately 483 members of the Settlement Classes receiving notice of the settlement, not one individual filed an objection, and not one individual opted-out. The opinions of class members, expressed through objections, opt-outs, and silence, represent the most important "new" information available at the court's final, rather than preliminary, settlement assessment stage. To be sure, final approval may be warranted even where a percentage of class

14

members object to or opt-out of a settlement. *See Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1189 (10th Cir. 2002) (ruling that the district court did not abuse its discretion in determining that the settlement, from which an extremely small percentage of class members opted out, was fair, reasonable and adequate).

But where, as here, no class members have objected, final approval is eminently appropriate. *See McClean v. Health Sys., Inc.,* No. 6:11-CV-03037, 2015 WL 12426091, at *6 ("No Class Member filed an objection to this settlement, and only fourteen individuals opted out (.04% of the Class).  This lack of opposition clearly supports approval."). The fact that no members of the Settlement Classes have objected to any term of the proposed settlement and not one has opted out, weighs heavily in favor of final settlement approval.

In sum, the settlement brings certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and evolving legal issues.  While both sides believe the facts support their respective positions, Plaintiff and Defendant reached this proposed compromise after extended settlement discussions facilitated by a well-regarded mediator. Plaintiff therefore requests that the Court grant final approval of the settlement.

**B. Approval of the FLSA Class Settlement and Final Certification of the Settlement Class.**

**1. The Court Should Approve the Settlement as a Reasonable Resolution of a Bona Fide Dispute**

The court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-staged. Pursuant to the law within this district, the court should first determine that the settlement was the product of a bona fide dispute. *Tommey v. Computer Scis. Corp.,* No. 11-CB-02214-EFM, 2015 U.S. Dist. LEXIS 48011, at *2 (D. Kan. Apr. 13, 2015) (citing *Peterson v. Mortg. Sources, Corp.,* 2011 U.S. Dist. LEXIS 95523, at *4 (D. Kan. Aug. 25, 2011)). Second, the Court

should determine whether the Settlement Agreement represents a fair and reasonable resolution of a bona fide dispute over FLSA coverage. *Id*. (citing **Peterson** at \*4). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. . ." and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." **Marcus v. State of Kan.**, 209 F. Supp. 2d 1179, 1182-83 (D. Kan. 2002). Upon determination that the settlement of a bona fide dispute is fair and reasonable, the Court may enter a stipulated judgment. **Peterson** at 17. Additionally, courts that have conditionally certified collective actions, such as the one in this case, must make some final class certification finding before approving of the settlement. Further, FLSA settlements must also contain an award of attorneys' fees. *Id*. at 18; see also 29 U.S.C. § 216(b). Plaintiffs respectfully submit that this Court should conclude that the Parties' settlement is a reasonable resolution of a bona fide dispute in contested litigation.

### a. This Settlement Represents the Resolution of a Bona Fide Dispute

First, this settlement represents the resolution of a *bona fide* dispute, as the Agreement came only after a vigorously contested mediation. To meet the obligation of demonstrating a bona fide dispute, the parties seeking approval of a settlement must provide the following information: 1) a description of the nature of the dispute; 2) a description of the employer's business and the type of work performed by the employees; 3) the employer's reasons for disputing employees' right to overtime; 4) the employees' justification for the disputed wages; and 5) if the wage computation is disputed, each party's estimation of the total hours worked and the applicable wage. *Tommey v. Computer Scis. Corp.*, No. 11-CB-02214-EFM, 2015 U.S. Dist. LEXIS 48011, at \*5-6 (D. Kan. Apr. 13, 2015).

As previously stated, named Plaintiff Elizabeth Elston ("Plaintiff") filed, collectively and as a class action, a claim against defendant Horizon Global Americas, Inc. ("Defendant") for: (1) violations of the Fair Labor Standards Act ("FLSA"); and (2) violations of the Kansas Wage Payment Act ("KWPA"). These claims arose out of the allegations that Defendant failed to pay Plaintiff, and others

16

similarly situated, for hours and overtime in accordance with state and federal law. Plaintiff alleged that, *inter alia*, she, and others similarly situated, were required to perform work that was integral and indispensable to their principal activities without compensation at the beginning and ending of their shifts due to an unlawful rounding practice.

Defendant is "the #1 designer, manufacturer and distributor of a wide variety of high-quality, custom-engineered towing, trailering, cargo management and other related accessory products in North America and Europe." www.horizonglobal.com/about (last visited on March 10, 2021). Plaintiff, and the class members, are non-exempt, hourly employees who work or worked for Defendant and who used a time clock to track their time anytime between February 7, 2016 and September 26, 2019.

Plaintiff's allegations stem from the contention that the rounding system used by Defendant unfairly operated in favor of Defendant and did not compensate the Settlement Class for time that they were performing principle job activities. Plaintiff contends that the rounding policy caused rounding in favor of the employer in 90.7% of all workweeks; it was neutral in 6.3% of all workweeks; and it favored the employees in only 2.9% of all workweeks. Osman Declaration, ¶ 11 (Doc. 39-5). Plaintiff alleges that this rounding system is unnecessary, as Defendant's time clock machines are able to record accurately to the minute the employees' clock in and out time. While Defendant disagrees, based on this information derived from the data, in Plaintiff's view of the facts, the rounding policy employed by Defendant tended to favor the employer. Therefore, Plaintiff argues that there is no good faith basis for the use of this rounding system which fails to compensate them under the FLSA. On February 11, 2019, Defendant filed an answer to Plaintiff's Amended Complaint, denying all liability and asserting 12 affirmative defenses. (Doc. 9). As part of the Defendant's answer, Defendant asserted that Plaintiff's claims are barred because the activities for which she seeks compensation do not constitute compensable work.

The wage computation used for settlement is not disputed in this case and is the result of a hard-fought mediation and compromise. The Parties do not agree, however, as to the compensability of any rounded time. Plaintiff asserts, *inter alia,* that Defendant caused its hourly employees to work off the clock by maintaining an unlawful time clock rounding policy. Defendant denies that any compensable off-the-clock work occurred, and therefore believes the damages should be zero.

If this litigation were to proceed to trial, the parties would undoubtedly face disputes over issues of both fact and law. The dispute is, therefore, bona fide. Only after a significant and intensive mediation, with the assistance of an experienced mediator, were the Parties able to reach the instant Settlement Agreement. There can be no doubt that this Agreement resolves a *bona fide* dispute between Plaintiffs and Defendant.

### b.  This Agreement is Fair and Reasonable

Second, the proposed settlement is fair and equitable to the parties concerned. To determine whether the proposed settlement is fair and equitable, the factors which courts consider in approving class action settlements under Rule 23(e) provide a general framework for the Court's determination. *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 1096, at *18 (D. Kan. Jan. 5, 2011). As argued above, in section IV(a) of this memorandum, the Court should find that the settlement reached by the parties is both fair and reasonable.

"As courts have recognized, when considering settlement agreements, they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the "bird in the hand" instead of a "prospective flock in the bush" approach. **In re BankAmerica**, 210 F.R.D. at 701. Accordingly, Plaintiffs requests that the Court approve the settlement and order that Plaintiff and participating class members be paid in accordance with the terms of the settlement and the Agreement.

## 2. Final Certification of the Settlement Class is Appropriate

The Court should find that it is appropriate to approve of the final certification of this action as a collective action for settlement purposes only. When parties settle FLSA claims before the Court has made a final certification ruling, the court must make some final class certification finding before it can approve a collective action settlement. *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 1096, *12 (D. Kan. Jan. 5, 2011). "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 558 (9th Cir. 2019) *citing* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018) ("Courts ... regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns."). In FLSA cases, courts will generally address certification of a collective action at two different stages. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001). In the first stage, courts require a very low burden, looking at whether or not the plaintiff has made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* During the second stage, which should be applied in this instance as this matter has already been conditionally certified, courts apply a stricter standard and review of several factors including (1) the disparate factual and employment settings of individual Plaintiffs; (2) various defenses available to Defendant which appear to be individual to each Plaintiff; and (3) fairness and procedural considerations. *Id.* As discussed below, we address each of these factors to demonstrate that final certification of a collective action is appropriate for settlement purposes only.

The collective class proposed by the Settlement Agreement is substantively, apart from the scope, the same as the Rule 23 Class. While the Rule 23 Class is limited to those employees working within the state of Kansas, both are defined as "all persons currently and formerly employed by Defendant in hourly position" who used a time clock at any time between February 7, 2016 and

September 26, 2019. Settlement Agreement, ¶¶ 2(d)-(e) (Doc #39-1). Plaintiff contends that the class

plainly meets the requirement of 29 U.S.C. § 216(b) because all members are "similarly situated" for

the purposes of settlement.

With respect to the first factor, Plaintiff asserts for settlement purposes that there are no

disparate factual issues between individual class members. Plaintiff alleges that all members used a

time clock that was subject to a uniform rounding policy. All members could legally bring an action

for any allegations against the Defendant that they were required to work off the clock and were thus

undercompensated by the Defendant. With respect to the second factor, for the purposes of

settlement, there are no defenses known to Plaintiff's Counsel that would be unique to members of

the class. Finally, a review of fairness and procedural considerations demonstrates that treatment of

this matter as a certified collective action for the purposes of settlement is appropriate. "Fairness and

procedural considerations" – such as allowing plaintiffs to pool their resources for litigation – favor

collective action treatment for the purposes of settlement. The Settlement Agreement makes

provisions for fairness and procedural considerations by mandating that notice be sent to all putative

Class Members, thereby allowing them the chance to submit a claim form, opt-out, or object to the

settlement. The mechanisms used will be sufficient to provide each Class Member with the benefits

of the Settlement Agreement or the choice to retain their rights to bring individual suit. The Parties

request that the Court finally certify the collective class for purposes of this Settlement.

### 3.  The Court Should Approve the Requested Attorneys' Fees and Costs

Under the FLSA, Plaintiff is entitled to reasonable attorneys' fees spent in recovering unpaid

wages. *See* 29 U.S.C. § 216(b). Generally, "[t]he amount of the fee . . . must be determined on the facts

of each case," and "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v.*

*Eckhart*, 461 U.S. 424, 429, 433 (1983). As part of the settlement, Plaintiff requests Eighty-Five

Thousand Dollars and No Cents ($85,000.00) as attorneys' fees and costs (separate from the

administration costs) and Ten Thousand Dollars and No Cents ($10,000.00) as reimbursement for settlement administration costs incurred in this action, which the Court preliminarily approved on October 28, 2020. Doc. 41. Defendants do not oppose such request. Plaintiff hereby respectively requests that the Court issue an order granting final approval of Plaintiff's requested attorneys' fees and costs.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the Parties have done so because Defendant has agreed that it will not oppose Plaintiff's request for such reasonable fees and costs. The Parties in this matter have also agreed to a common fund settlement. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g., Trustees v. Greenough*, 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

In determining a reasonable attorney's fee in this Circuit, the Court "must consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 95523, at *32 (D. Kan. Aug. 24, 2011) (the "Johnson Factors"). These factors are:

> (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee, (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

**Id** at 32-33.

#### a. The Time and Labor Required

Plaintiff's Counsel has expended a considerable amount of effort in investigating, filing, conducting discovery, and mediating this case. Plaintiff's Counsel has spent over 225 hours working on this case as of the time of their motion for preliminary approval of this settlement.[8] *Osman Declaration*, ¶¶ 28-29 (Doc. 39-5). Plaintiff's counsel documents a lodestar of over $110,715.75. *Id.* at ¶ 29. The request for attorney's fees of $85,000 means Plaintiff's Counsel is seeking an award of fees significantly less than their lodestar, resulting in an approximate blended hourly rate of less than $320.42. *Id.* at ¶ 31. A negative lodestar multiplier of 0.767 confirms the reasonableness of the fee award in light of the positive multipliers frequently awarded in the Tenth Circuit. *See, e.g., Cook v. Rockwell Int'l Corp.,* No. 90-cv-00181-JLK, 2017 U.S. Dist. LEXIS 181814, at *10, *16-17 & n.6 (D. Colo. April 28, 2017) (finding that "[t]ypical multipliers range from one to four depending on the facts, with many courts awarding multipliers larger than four on case-specific grounds" and collecting federal cases to support conclusion that "multiplier of 2.41 is within the range of those frequently awarded in common fund cases."); *Campbell v. C.R. Eng., Inc.,* No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235, at *20 n.5 (D. Utah Sept. 30, 2015) (finding "lodestar crosscheck calculation here results in multiplier of 2.9, which is within a reasonable range" of approved multipliers within the Tenth Circuit)*; see also, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051-52 & n.6 (9th Cir. 2002) (affirming district court's fee award based on 3.65 lodestar multiplier and listing nationwide class action settlements from 1996-2001 approving multipliers ranging up to 8.5). The time, labor, and lodestar therefore support the reasonableness of the attorneys' fees sought.

---

[8] Plaintiff's Counsel's time reflects time incurred up to and through August 5, 2020. Plaintiff's Counsel has continued to maintain contemporaneous time records through the date of this filing but has not increased the stated hours for purposes of the motions for preliminary or final approval.

### b.  The Novelty and Difficulty of the Questions Presented

This FLSA collective action presented a myriad of unique legal issues, considering this case was also pursued as a "hybrid" Rule 23 class action.  This case required a firm understanding of the "opt-in" FLSA mechanism and its implications which are distinct from the traditional Rule 23 opt-out class.  This hybrid class case also required a specialized familiarity with novel and complex procedural rules.  In terms of the specific allegations, calculation of class wide damages requires significant knowledge and experience to properly calculate and would take significant efforts to present in a coherent manner to a jury or fact-finder at trial. This factor supports Plaintiff's application.

### c.  The Skill Requisite to Perform the Legal Service Properly

Courts in this Circuit have held that "wage and hour issues in [similar] litigation are governed by highly technical state and federal wage statutes and regulations" and that a Class Counsel who has litigated numerous cases under these laws would possess "the requisite skill to perform the legal service required in this complex litigation." ***Shaw v. Interthinx, Inc.***, Civil Action No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *16 (D. Colo. Apr. 21, 2015).  Class Counsel are highly experienced and litigate complex wage-and-hour cases of similar complexity in Kansas City and the region and have successfully prosecuted many wage and hour actions both locally and nationwide. ***Osman Declaration*** (Doc. 39-5).  Due to Counsel's skill and experience, the Parties were able to arrive at the present settlement. The hourly rates reflected are less than those charged by firms with comparable expertise in class actions and other complex litigation, and these rates are very reasonable when compared to those approved by courts in this region. ***Osman Declaration*** (Doc. 39-5). This factor supports Plaintiff's application.

### d.  The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case

As explained above, this case required a significant time commitment.  Given the complexity of wage and hour cases it is unsurprising that such cases take up a large amount of time and will

naturally preclude attorneys from capitalizing on other opportunities. Plaintiff's Counsel is a small law firm. Naturally, Plaintiff's Counsel must be selective about the cases they take. The time, effort, and energy expended on this case, reflected above, precluded Plaintiff's Counsel from taking on other promising cases. This factor supports their fee request.

### e.  The Customary Fee

Class Counsel typically only accepts contingency fee cases, and the rates charged in this case are customary to those they charge in other cases.  *Osman Declaration* (Doc. 39-5).  Furthermore, the effective hourly rate of less than $320.42 per hour is very reasonable compared with rates charged in the Kansas City area for similar types of lawsuits.  *See* **Missouri Lawyer's Weekly 2019 Billing Rates** (Doc. 39-8) (listing Kansas City partner-level hourly rates in FLSA and class and collective action litigation ranging from $550 to $865 per hour); *see also* **Bruner v. Sprint/United Mgmt. Co.**, No. 07-2164-KHV, 2009 U.S. Dist. LEXIS 60125, at 23-25 (D. Kan. July 14, 2009) (finding a 2009 effective hourly rate of $590.91 high but acceptable for a "garden variety" FLSA case for an experienced litigator).  As such, there is no doubt the requested fees are reasonable given the skill required.

### f.  Whether the Fee is Fixed or Contingent

Numerous cases have recognized that risk is an important factor in determining the fee award. *See, e.g.,* **In re Crocs, Inc. Sec. Litig.**, Civil Action No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396, at *16 (D. Colo. Sep. 18, 2014) *(citing* **In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.**, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("the risk of receiving little or no recovery is a major factor in awarding attorney fees"); **In re Charter,** 2005 WL 4045741, *15 (finding that class actions "are by their nature, complex and difficult to prove."); **In re Continental Illinois Securities Litigation**, 962 F.2d 566, 569, 574 (7th Cir. 1992) (reversing trial court for refusing to award class action contingency lawyers more than their ordinary billing rates in order to reflect the risky character

24

of their undertaking).  Class Counsel undertook the representation of the class on a fully contingent basis and would recover no amount for expenses or time incurred unless the case succeeded. ***Osman Declaration*** (Doc. 39-5). It is well recognized that contingency representation ought to be compensated at a higher rate and is appropriately considered when assessing the hourly rates of plaintiffs' counsel. This factor weighs in favor of granting Plaintiff's fee request.

### g.  Time Limitations Imposed by the Client or the Circumstances

This case did not present an unusually compressed time period; however, it is the nature of collective actions to incentivize resolutions as quickly as possible due to the manner that statutes of limitations expire until a putative class member joins the litigation.  Were Plaintiffs' Counsel to take an extra day to litigate or file, that extra day would result in a diminished award of one day for whoever's consent to join was thereby delayed.  As such, the inherent nature of time limitations in an FLSA case argue for fee approval. This factor supports Plaintiff's application.

### h.  The Amount Involved and the Results Obtained

The amount involved, and the results obtained are consistent with the requested attorneys' fees. Class Members are expected to receive a guaranteed payment rather than a speculative possibility of recovery only upon the conclusion of successful litigation. They are expected to receive compensation for approximately 75.7% of their best day unliquidated damages, representing a reasonable compromise given the risk attendant with continued litigation. Such an amount reflects a realistic settlement value of this case during this stage of litigation. The sum is reasonable considering the further expense associated with litigating this action in the event that the matter did not settle. If the litigation were to continue, Plaintiff, Defendant, and the Court would all face the prospect of dealing with further costly discovery, motions for summary judgment, disputes over class certification, factual disputes relating to the quantity and value of uncompensated time, overtime calculations, and many other attendant difficulties. As is often the case in such complicated litigation, no result is certain.

The immediate value conferred by settlement to Plaintiff's Class strongly outweighs the speculative recovery of uncertain value in the future. Importantly, the settlement has been well received by the members of the settlement class.  After receiving their Court-approved notice, not one class member has objected to the terms of the settlement, and not one has opted out.  This factor therefore argues in favor of fee approval.

### i.  The Experience, Reputation, and Ability of the Attorneys

Plaintiff's Counsel has represented over 2,700 employees against their employers and have recovered over $15.4 million on behalf of plaintiffs. Plaintiff's Counsel has handled multi-million-dollar FLSA cases. As such, Plaintiff's Counsel has a high level of experience litigating these types of cases. Plaintiff's Counsel utilized their experience to deliver a quality settlement to Plaintiff's Class.

### j.  The "Undesirability" of the Case

The time and financial resources required to litigate a "hybrid" FLSA collective and Rule 23 class action case such as this, involving hundreds of potential class members, make this case particularly undesirable to most plaintiff's attorneys in the market.  This factor supports Plaintiffs' fee request.

### k.  The Nature and the Length of the Professional Relationship with the Client

Class Counsel spent many hours discussing the claims in this case with the named Plaintiff. While Plaintiff's Counsel's relationship with the Representative Plaintiff is significant, it is not one in which other business is likely to be obtained. Plaintiffs, in the context of an FLSA collective action are rarely longstanding clients of Plaintiff's Counsel. It is Plaintiff's Counsel's hope that this process will serve as a valuable lesson to the Collective Action Members about their rights to compensation pursuant to the FLSA. As a result of this increased knowledge, it is possible for the FLSA Collective Class Members to refuse employment that would result in future violations of their rights and

therefore, they may never require the services of Plaintiff's Counsel again. While Plaintiff's Counsel certainly hopes they will be contacted in the future for any legal claims on behalf of the FLSA Collective Class Members, it is unlikely that those individuals will remain Plaintiff's Counsel's clients because Plaintiff's Counsel focuses its practice on representing employees and does not generally handle other legal matters.

### 1. Awards in Similar Cases

Finally, an award of the attorneys' fees sought in this case is modest and not unusual when compared with other similar awards given in FLSA cases. *See, e.g., Garcia v. Tyson Foods, Inc.,* No. 06-2198-JTM, 2012 U.S. Dist. LEXIS 170177, at *21 (D. Kan. Nov. 29, 2012) (attorney fees of $3,209,926); *Koehler v. Freightquote.com, Inc.,* No. 12-2505-DDC-GLR, 2016 U.S. Dist. LEXIS 91745, at *27 (D. Kan. July 13, 2016) (awarding attorneys' fees of $1,650,000); *Wales v. Jack M. Berry, Inc.,* 192 F. Supp. 2d 1313 (M.D. Fl. Dec. 21, 2001) (awarding attorneys' fees of $352,225.40, more than sixteen times the FLSA recovery of $21,000); *James v. Wash Depot Holdings, Inc.,* 489 F. Supp. 2d 1341 (S.D. Fl. May 14, 2007) (awarding attorneys' fees $114,021, more than thirty-two times the total judgment of $3,493.62).

Pursuant to the Fair Labor Standards Act, a prevailing party in such an action is entitled to recover all reasonably incurred attorneys' fees and costs. As the articulated criteria, the *Johnson* factors, weigh heavily for approval of the fee requested, it therefore is abundantly reasonable and should be approved. Plaintiff, therefore, requests final approval of attorneys' fees and costs (not including settlement administration costs) of $85,000.00 and settlement administration costs of $10,000.00.

### 4. The Court Should Approve the Requested Service Awards.

The Court must examine any service awards to determine whether they are fair and reasonable. *Enegren v. KC Lodge Ventures, LLC,* No. 17-2285-DDC-GEB, 2019 U.S. Dist. LEXIS 177192, at *21 (D. Kan. Oct. 11, 2019). In the Court's order granting preliminary approval to the Parties' Settlement

Agreement, the Court reduced the individual service award for Plaintiff Elston to $830.00. (Doc. 41).

The reduced service award is calculated to appropriately compensate Ms. Elston for her contribution to the case, totaling 41.5 hours. The revised service awards directly align with the Court's $20 per hour standard, making the service awards sought in this case presumptively reasonable. *See* Doc. 56 at 22; *Foster v. Robert Brogden's Olathe Buick GMC, Inc.,* No. 17-2095-DDC-JPO, 2019 WL 10002046, at *19 (D. Kan. Feb. 28, 2019). The reduced service awards sought are well within the range of reasonable service awards approved by Kansas District Courts. *See, e.g., Enegren,* 2019 U.S. Dist. LEXIS 177192, at *21 ($5,000 service award); *Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 U.S. Dist. LEXIS 60125, at *5 (D. Kan. July 14, 2009) ($5,000 service award for 131 hours); *In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1270 (D. Kan. 2006) ($5,000 service award for 80 hours).

Additionally, the Court should approve this proposed service award because it is reasonable and warranted based on the actions that Ms. Elston took over the course of a year of litigation to protect and advance the interests of other similarly situated employees to whom a substantial benefit has been conferred under this settlement. *See Declaration of Elizabeth Elston* ("Elston Declaration") (Doc. 33-6). Ms. Elston actively participated and assisted counsel in all phases of this litigation. This included working with counsel during the initial case investigation phase and the preparation of the original Complaint, assisting with initial Rule 26 disclosures, responding to written discovery, producing documents, and attending a day-long mediation. *Elston Declaration* (Doc. 33-6).

Ms. Elston has taken a "reputational risk" by attaching her name to litigation against her employer and could experience difficulty securing employment with future employers that learn of her involvement in such litigation. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employer.") (approving

incentive award of $10,000 to named plaintiff, plus additional $5,000 for broader release of claims).

In the Tenth Circuit's sister circuit, the 8th Circuit, service awards are often granted to named plaintiffs "to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (awarding a $10,000 service award). Indeed, in many courts, awards of well over $10,000 are not unusual. *Tussey v. ABB, Inc.*, 850 F.3d 951, 961-62 (8th Cir. 2017) (affirming incentive awards of $25,000 to each of the three named plaintiffs as compensation for their work and the benefit they conferred on the rest of the class); *Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in wage-and-hour settlement after 2½ years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after 3 years of litigation).

The modest service award sought by the Plaintiff in this case should be readily approved by the Court.

## V.    CONCLUSION

For the reasons set forth above and in the supporting declarations and exhibits, the settlement presented is an immediate, real, substantial, and fair settlement, and Plaintiff asks this Court to enter the accompanying Proposed Final Order (Ex. 2), fully resolving this matter.

Dated:  March 18, 2021

Respectfully submitted,
OSMAN & SMAY LLP

/s/ Matthew E. Osman
Matthew E. Osman, KS Bar #23563
Kathryn S. Rickley, KS Bar #23211
8500 W. 110th Street, Suite 330
Overland Park, Kansas 66210
Telephone:      (913) 667-9243
Facsimile:      (866) 470-9243
mosman@workerwagerights.com
krickley@workerwagerights.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 18, 2021, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

By:     /s/ Matthew E. Osman
               ATTORNEY FOR PLAINTIFFS